## STATE EX REL. FOOTE v. BOARD OF LIVE STOCK COMMISSIONERS ET AL.

LIVE STOCK COMMISSION — SECRETARY — MANDAMUS — ESTRAYS — PROOF OF CLAIMANT.

1. The statute regulating the inspection of cattle and horses shipped from this state, providing that the secretary of the live stock commission, upon satisfactory proof of the ownership of any estray sold as otherwise provided in the act, and for which he has received the money, shall pay such owner the amount received, if such ownership shall be proved within one year after the publication of the notice of sale of said estray, confers upon the secretary authority to hear and determine the question of ownership, and the exercise of that authority is the exercise of judicial functions in respect to which the secretary is endowed with judicial discretion, and his decision cannot be corrected by mandamus.

2. The further provision that "Proof of ownership shall be by affidavit of the owner, with at least one corroborating witness" does not imply that the affidavit so corroborated shall be the maximum proof required, but refers to the minimum of the quantity of proof to be submitted, and the secretary may require further proof in corroboration of claimant's affidavit.

[Petition for mandamus filed Dec. 29, 1892.   Decided Feb. 9, 1893.]

ORIGINAL PROCEEDING in mandamus brought on the relation of Robert Foote to require the State Board of Live Stock Commissioners to pay to relator the proceeds from the sale of certain cattle shipped as estrays. Case heard upon demurrer to answer. The statement of the case as shown by the pleadings is fully set forth by Mr. Justice Clark, who delivered the opinion.

*John M. Davidson* and *Robert W. Breckons,* for relator.

*Charles N. Potter,* Attorney General, for defendants.

Clark, Justice.

This is a proceeding originally commenced in this court, in which the relator prays for a writ of mandamus, requiring the defendants to pay over to him the proceeds of certain cattle sold as estrays by one C. L. Talbott, a stock inspector, stationed at Omaha, Nebraska.

The petition of the relator averred in substance that he is a resident and citizen of the County of Johnson, in the State of Wyoming, and engaged in the business of dealing in, raising and selling live stock; that on or about the 7th day of October, A. D. 1891, he was the owner of and in the possession of three certain head of cattle, branded with his brand; and on said day he shipped said cattle, in his own name, to market at Omaha, in the State of Nebraska; that upon the arrival of said cattle at Omaha, Nebraska, one C. L. Talbott, who was then and there an inspector appointed by the Board of Live Stock Commissioners of Wyoming, in pursuance of law, seized said three head of cattle as estrays, sold them, and remitted the proceeds to the secretary of said board.

It is also averred that the ownership of the brand borne by said cattle, and of said cattle, were well known to the defendants and to the said stock inspector at the time of seizure.

It is also averred that thereafter the relator made proof of his ownership of said brand, and his ownership of the cattle to the defendants, as required by law, said proof consisting of relator's affidavit and the affidavit of a credible corroborating witness, and of other evidence; that after the making of said proof, relator demanded of the defendants that they pay over to him the proceeds of the sale made by said inspector as aforesaid, but that the defendants have neglected, failed and refused, and do still neglect, fail and refuse to pay said proceeds over to relator, and that by said refusal said relator was deprived of the possession, use and profit of the money which is justly his.

The relator further alleges that he has no plain or adequate remedy at law whereby he can have redress in the premises, and will be entirely without remedy unless it be afforded by the interposition of this court, and he prays that a writ of man-

damus issue against the defendant, the Board of Live Stock Commissioners of Wyoming, requiring it to make an order directing its secretary, Hiram B. Ijams, to pay to relator the proceeds of the sale of said cattle, and requiring the said Hiram B. Ijams, as such secretary, to pay to relator said proceeds.

To this petition the defendants filed their joint answer, in which it is admitted that at the time mentioned in the petition the relator shipped the cattle mentioned from this State to market at Omaha, Nebraska, and that upon their arrival at Omaha, the said stock inspector seized them as estrays, sold the same, and remitted the proceeds, amounting to the sum of $77.83, to the secretary of the Board of Live Stock Commissioners.

It is denied in the answer that relator was ever at any time the owner of the three head of cattle mentioned in the petition, or of any of them.

It is also denied that the relator has at any time made satisfactory proof to the said board, or to the said secretary, of his ownership of said three head of cattle, or of any of them.

The defendants aver that on or about the 25th day of October, A. D. 1891, the relator submitted to the said secretary his affidavit, to the effect that he was the owner of said steers, having bought the same from one L. A. Webb for value, taking a bill of sale therefor from said Webb at the time of sale, and that he has never sold them or parted with the ownership of the same. - This affidavit, it is averred in the answer, was accompanied by the affidavit of said Webb, to the effect, that in November, 1890, he sold and delivered to relator seven steers, for value, the same being branded with what is called the "Hat Brand," and that at the request of relator, he branded the steers with relator's brand at the time of the sale; and that on the 15th day of July, A. D. 1892, the relator also submitted to said secretary his affidavit, to the effect, that he was the owner of the stock bearing the brand borne by the said three head of cattle; that he was the owner thereof at the time of the shipment of the cattle, and that the three head of cattle were taken from him at Omaha, Nebraska, and the proceeds

were remitted to the said secretary, and by him held as a portion of the estray fund; that these proceeds belonged to him and he demanded payment. This affidavit is corroborated by one W. B. Adams, who is certified to by the officer before whom the affidavits were made to be a credible person and worthy of credit.

The defendants further allege that said proof and said affidavits so made by the relator were not satisfactory proof to the said secretary nor to said board of the ownership of said cattle by said relator, "and therefore the said Board of Live "Stock Commissioners and the said secretary did decide that "the said Robert Foote was not the owner of said cattle so far "as established by proofs submitted to them."

The defendants also allege that from other papers and documents in possession of the said secretary, it appeared to him and to the board that at the time the relator purchased said cattle, his vendor Webb was not the lawful owner of the same, and that the cattle did not properly belong to said relator.

To this answer the relator filed a general demurrer, and it is upon the demurrer to the answer that the cause now comes before the court.

The transactions set forth in the petition and answer were had under the statute creating the Board of Live Stock Commissioners and defining its duties, Chapter 33, page 150, Laws 1890-91, approved January 8, 1891.

The sections of that act which are applicable to this case, are as follows:

"Sec. 25. All inspectors shall keep a record of all estrays which they may find in any shipment of cattle or horses in transit from this State, and shall take a receipt for the same from the shipper, or in default of such receipt shall take such estray from such shipment, giving the shipper a receipt for the same on behalf of the live stock commission. Said inspector shall make a report every thirty days of all such estrays not heretofore reported to the secretary of the live stock commission, giving a description of the same, stating any brands or other marks by which the same may be identified. Said secretary

shall keep a record of all such estrays reported to him as aforesaid, which shall at all times be open to the public for inspection."

"Sec. 26.   It shall be the duty of all persons shipping estrays at once upon the sale thereof to remit to the secretary of the live stock commission the proceeds received for each and every estray, the ownership of which shall be unknown to the inspector to whom a receipt for the same was given.   If any inspector shall at any time sell an estray shipped from this State, he shall immediately remit the proceeds thereof to the secretary of the live stock commission."

"Sec. 27.   All moneys received by the secretary of the live stock commission from the sale of estrays shall be kept by such secretary in his hands separate from any other fund, and shall be known as the "estray fund," and shall be so held by said secretary until so paid over to the owners of such estrays, or paid over to the State Treasurer as hereinafter provided."

"Sec. 28.   The secretary of the live stock commission shall, semi-annually, and during the last week of June and December of each year, send two lists of all unclaimed estrays, for which he has received payment, to the county clerk of each county, who shall post one copy in a conspicuous place in the court house, and place one copy on file in his office, as herein provided since his last publication as herein provided."

"Sec. 29.   The secretary of the live stock commission upon satisfactory proof of the ownership of any estray sold as above provided, and for which he has received the money, shall pay such owner the amount received from the sale of such estray or estrays;   provided, that such ownership shall be proven within one year after the publication of the notice of sale of said estray or estrays, as above provided.   Proof of the ownership shall be by affidavit of the owner with at least one credible corroborating witness."

Upon argument, counsel for relator called our attention especially to Section 29 quoted in the statement of the case appended hereto, and contended that inasmuch as the statute provides that "proof of ownership shall be by affidavit of the owner with at least one credible corroborating witness," that

when such affidavit so corroborated is submitted, it only remains for the secretary to pay out the proceeds from the sale of estrays to the person so claiming and submitting such proof, and that the secretary has no power or authority to look to any other papers or documents in his possession which may affect the question before him, but that the question of the ownership of the estrays and of the claimant's right to the proceeds thereof, must be determined solely by the proofs submitted by the claimant, and he also contended, that in a proceeding of this kind, this court would examine the proofs submitted to the secretary, and if in our opinion it should appear from such proofs that the secretary erred in his decision, we would correct the error and issue the writ as prayed for. We cannot assent to this doctrine.

The Section 29 before quoted, unquestionably confers upon the secretary power and authority to hear and determine the question of the ownership of any estrays sold under the provisions of the act and for which he has received the money. The exercise of this power is clearly the exercise of judicial functions, and in the exercise of judicial functions it is plain that the secretary is endowed with judicial discretion. The provision of the statute that proof of ownership shall be by affidavit of the owner with at least one credible corroborating witness, cannot reasonably be construed in such a way that it will take away any part of the discretion with which the law has clothed the secretary, and require him to pay out the funds claimed, upon proofs which do not satisfy his mind and judgment, and that, simply because the proofs are in the form as required by the statute. This would indeed be sacrificing substance to form, and transforming a provision intended to furnish owners of estrays a simple and inexpensive method of reaching the proceeds of their property, into a possible means of perpetrating the gravest of frauds. The language of the section certainly does not afford ground for any such construction. It contemplates that the proof shall be satisfactory to the secretary, and in providing that the affidavit of the owner shall be corroborated by at least one credible witness, clearly implies, not that such proof shall be the maxi-

mum but the minimum of the quantity of proof to be submitted, and that the secretary may require further and additional proof in corroboration of claimant's affidavit.

Such being the case, how can it be claimed that in a proceeding of this nature we can review the case made before the secretary, and if in our judgment it should appear that the secretary erred in the conclusion which he reached, issue the writ, thus transforming a proceeding in mandamus into an appellate proceeding to vacate, modify or reverse the decision of an official clothed with limited judicial power.

Our statute, Section 3073, Revised Statutes, thus defines mandamus: "Mandamus is a writ issued in the name of a Territory to an inferior tribunal, corporation, board or person commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." And Section 3074 expressly provides that "although it may require an inferior tribunal to exercise its judgment, or to proceed to the discharge of any of its functions, it cannot control judicial discretion."

This statutory provision is no new doctrine, it simply emphasizes the rule which almost universally existed at common law. We do not deem it necessary to cite authorities in support of the rule. They are so numerous that the rule may be considered elementary.

In Hoole v. Kinkead, 16 Nevada, 217, the court held that "A subordinate body can be directed to act, but not how to act in a matter as to which it has the right to exercise its judgment, and where it is vested with power to determine a question of fact, the duty is judicial, and however erroneous its decision may be, it cannot be compelled by mandamus to alter its determination." We think the above quotation entirely applicable to the case before us. It is true that in cases where it appears that the tribunal required to determine a question of fact did determine the question, but in such a way that it was apparent from an examination of the cause that it flagrantly abused its discretion and refused to exercise its judgment upon the proofs presented to it, mandamus will lie and will correct such abuse of discretion; but no such abuse

appears in this case, and hence this proposition need not be further considered.

For the foregoing reasons we are of the opinion that the answer does set forth a defense to the application for a writ of mandamus, and that the demurrer should be overruled.

*Demurrer overruled.*

GROESBECK, C. J., and CONAWAY, J., concur.