(December 13, 1897.)

## PYKE, RECEIVER, v. STEUNENBERG ET AL., AS STATE BOARD OF EXAMINERS.

[51 Pac. 614.]

CONSTITUTIONAL LAW—BOARD OF EXAMINERS—MANDAMUS—JURISDIC-
TION.—Where the constitution provides a board for the examina-
tion of claims against the state and such board for an unreason-
able time delays action upon a claim presented, while a writ of
mandate will issue to require said board to proceed and pass upon
such claim, the court has no jurisdiction to direct how such board
shall act.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

R. E. McFarland, Attorney General, and S. L. McFarland,
for Appellants.

Is the state board of examiners vested with judicial discre-
tion? We submit that this board is clothed with judicial dis-
cretion and is part and parcel of the executive department of
the state.   Article 4 of the constitution is entitled "executive
department" and defines the duties of the executive branch of
the state government.   Section 18 of said article 4 clothes the
board with full power to examine all claims against the state,
excepting salaries and compensation of officers fixed by law,
and further provides that no claim against the state, except
salaries and compensation of officers fixed by law shall be
passed upon by the legislature without first having been con-
sidered and acted upon by said board.   It is a well-established
principle that *mandamus* will not issue to govern the discre-
tionary power of an officer or control his decision.   (*Ex parte
Brown*, 116 U. S. 401, 6 Sup. Ct. Rep. 387; *Ex parte Morgan*,
114 U. S. 174, 5 Sup. Ct. Rep. 825; *Ex parte Flippin*,
94 U. S. 350; *Ex parte Railway Co.*, 101 U. S. 720;
*Ex parte Burtis*, 103 U. S. 238; *People v. Illinois State
Board Dental Examiners*, 110 Ill. 185; *State v. State Board
of Health*, 103 Mo. 22, 15 S. W. 322; *State v. Gregory*,
83 Mo. 123, 53 Am. Rep. 565; *State v. McGrath*, 91 Mo. 386,
3 S. W. 846; *State v. Humphreys*, 47 Kan. 561, 28 Pac. 722.)

The principle of law is well settled that *mandamus* will not lie to direct official acts which require the exercise of judgment and discretion. It is not within the jurisdiction of the judiciary to control or direct state board created by the constitution, or issue *mandamus* to control the acts of the executive department of the government. (*State v. Board of Liquidation,* 42 La. Ann. 647, 7 South. 706, 8 South. 577; *People v. Board of State Auditors,* 32 Mich. 291; *United States v. Black,* 9 S. C. 14; *Litchfield v. Register and Receiver,* 9 Wall. 575; *Gains v. Thompson,* 7 Wall. 347; *United States v. Commissioners,* 5 Wall. 563; *Virginia v. Rives,* 100 U. S. 314; *Carrick v. Lamar,* 116 U. S. 423, 6 Sup. Ct. Rep. 424; *Decatur v. Paulding,* 14 Pet. 610; *Brashear v. Mason,* 6 How. 92; *People v. Governor,* 29 Mich. 320, 18 Am. Rep. 89; *People v. Auditor General,* 38 Mich. 746; *Auditor General v. Pullman Palace Car Co.,* 34 Mich. 59; *Supervisors of Midland v. Auditor General,* 27 Mich. 165; *Royce v. Goodwin,* 22 Mich. 496; *People v. Board of State Auditors,* 42 Mich. 422, 4 N. W. 274; *State v. Whitcomb,* 28 Minn. 50, 8 N. W. 902; *Western Ry. Co. v. DeGrath,* 27 Minn. 1, 6 N. W. 341; *Dwelling-House Ins. Co. v. Wilder,* 40 Kan. 561, 20 Pac. 265; *State v. Boyd,* 36 Neb. 60, 53 N. W. 1116.) *Mandamus* does not lie to compel an auditorial board to allow a claim; the power of the court in that proceeding extends no further than to require them to act upon it. (*Auditorial Board v. Hendricks,* 20 Tex. 60; *People v. French,* 24 Hun (N. Y.), 263; *People v. Oneida Co. Supervisors,* 24 Hun, 413; 2 Spelling's Extraordinary Relief, sec. 1468, p. 1220; Throop on Public Officers, sec. 822; *Ex parte Gresham,* 82 Ala. 359, 2 South. 486; *McCreary v. Rogers,* 35 Ark. 398; *Willard v. Superior Court,* 82 Cal. 456, 22 Pac. 1120; *People v. Dulaney,* 96 Ill. 503; *Tilden v. Sacramento Co.,* 41 Cal. 68; *People v. Buffalo State Asylum,* 55 Hun, 603, 8 N. Y. Supp. 395.)

E. E. Chalmers, for Respondents.

It is difficult to conceive of any official action which does not entail the finding of the existence or performance of some condition precedent, and in this case all this board had to ascertain was, Did the contract exist, and has it been executed

by the claimant? These were mere preliminary questions, and are distinct from the act to be performed, and the rule concerning discretion does not therefor apply. (*State v. Murphy,* 19 Nev. 89, 6 Pac. 840; *Wood v. Strother,* 76 Cal. 545, 9 Am. St. Rep. 249, 18 Pac. 766; *State v. Board of Commrs.,* 22 Nev. 71, 35 Pac. 300.) The ultimate acts to be performed are directed by law. Section 753 of the Revised Statutes, commands the auditing officers to audit and allow these claims when certified and transmitted by the board of asylum directors and the state auditor to draw his warrants therefor. This gives the claimant a clear legal right to the warrants, and under these circumstances *mandamus* lies. (*Smalley v. Yates,* 36 Kan. 519, 13 Pac. 845; *Wood v. Strother,* 76 Cal. 545, 9 Am. St. Rep. 249, 18 Pac. 766; *Woffenden v. Board of Supervisors* (Ariz.), 25 Pac. 647; High's Extraordinary Legal Remedies, sec. 106; Wood on Mandamus, 19, 20, 25; *Neu v. Voege,* 96 Wis. 489, 71 N. W. 880; *State v. Great Falls,* 19 Mont. 518, 49 Pac. 15.) May a court issue a writ of mandate to direct or control the discretionary power vested in such board? Not as a general rule. But there are exceptions to all rules and the abuse of the discretion relied upon by appellants constitutes the exception to the above general rule and withal proves the same. Where a supposed discretion has been so flagrantly abused as in the case at bar, it may be controlled and directed by the courts. (Wood on Mandamus, 64; *State v. Board of Livestock Commrs.,* 4 Wyo. 126, 32 Pac. 114; *Wood v. Strother,* 76 Cal. 545, 9 Am. St. Rep. 249, 18 Pac. 766; *State v. Burdick,* 3 Wyo. 588, 28 Pac. 146; *Ex parte Bradley,* 7 Wall. 364; *Ex parte Commonwealth,* 100 U. S. 313; *Railroad Co. v. Stockton,* 51 Cal. 328; *McLeod v. Scott,* 21 Or. 94, 26 Pac. 1061, 29 Pac. 1; High's Extraordinary Legal Remedies, secs. 9, 119; *State v. Murphy,* 19 Nev. 89, 6 Pac. 840; *State v. Board of Commrs.,* 22 Nev. 71, 35 Pac. 300; *Middleton v. Low,* 30 Cal. 596; *Marbury v. Madison,* 1 Cranch, 137.) The alternative remedy suggested in appellants' brief is of a political nature, and not "a plain, speedy, and adequate remedy in the ordinary course of law" within the purview of section 4978 of the Revised Statutes of Idaho. (High's Extraordinary Legal Remedies, secs. 17, 20, 104; *Fremont v. Crippen,* 10 Cal. 215; *People v. Mayor,* 10 Wend. 395.)

HUSTON, J.—Respondent filed in the district court for Bingham county a petition for a writ of mandate against the state board of examiners and the state auditor, commanding said board to audit and allow certain claims presented to said board of examiners, and upon which the board has neglected to act. The claims, as appears from the petition, were for supplies furnished to the state asylum for insane at Blackfoot, and had been duly audited and allowed by the board of directors of said asylum, as required by law. Such claims were then presented to the state board of examiners, for their action thereon, said board of examiners having for some time had said claims before them, during which period several meetings of the board had been held, but no action had been taken by said board of examiners upon said claim. The district court ordered the issuance of the peremptory writ of mandate, commanding said board to audit and allow said claims, and from such order of said court this appeal is taken.

The only question involved in this case is, Had the district court authority to order the issuance of the peremptory writ commanding the state board of examiners to "audit and allow" said bill? Section 18, article 4, of the constitution of the state of Idaho, provides that "the governor, Secretary of State, and attorney general shall constitute . . . . a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law. And no claim against the state, except salaries and compensation of officers fixed by law, shall be passed upon by the legislature without first having been considered and acted upon by said board." By "An act relating to the board of examiners," approved February 23, 1891, it is provided that "the board may approve or disapprove any claim or demand against the state, or any item thereof, or may recommend a less amount in payment of the whole, or any item thereof, and a decision of a majority of the members shall stand as the decision of the board."

It is contended that, the board of directors of the insane asylum having passed upon the claim, it only remains for the board of examiners to acquiesce in such action by auditing and allowing the same. If this view is correct in regard to this

claim, it is equally true as to all other claims which both the constitution and the statutes require to be submitted to the board of examiners, and the board of examiners become, to all intents and purposes, a mere thing of straw. I suppose the intent and purpose of the framers of the constitution was to establish a board independent of all other boards, whose duty it is made to pass upon, "and approve or disapprove," all claims against the state not included in the classes excepted. The jurisdiction is conferred upon this court by the constitution (section 10, article 5) to hear claims against the state, and to make decisions thereon, which decisions "shall be merely recommendatory"; and this court has declined to hear any claims against the state until the same have been passed upon by the board of examiners. The board of examiners were created by, and derive their jurisdiction and authority from, the same source as this court, and, while acting within the scope of such authority, the courts have no power to direct or control their action. It is true that, should the board refuse to act in a matter upon which the law requires them to act, it is within the legitimate authority of the courts to compel them to act, because, as heretofore shown, until they do act the claimant is debarred from further pursuing his remedy. But we know of no authority, vested in this or any other court, which would authorize them to direct how the board of examiners should act in any case. To do so, would be, in our opinion, to override both the constitution and the laws, and to substitute for a tribunal provided by the constitution one clearly never contemplated by the framers of that instrument. Neither the constitution nor the statutes provide for or ever intended an appeal from the board of examiners to the courts. When a claim has been rejected by the board of examiners, the claimant may present his claim to the supreme court for a hearing, and that court, if it deems such action proper, may recommend its allowance by the legislature; and these proceedings are not limited to claims for which no appropriations have been made, but cover all claims against the state not included within the classes excepted by the constitution and the statutes. (The growing apprehension in this country of evil from encroachments by the judiciary upon the co-ordinate branches of the government are not unfounded, and while we hold it to be the first and most

imperative duty of a court to fearlessly administer the law as made, and never to permit, if in its power to prevent, any infractions of the constitution we are all sworn to uphold and maintain, still we do not think courts can be too careful in assuming, by construction, authority and jurisdiction not only not conferred upon them by the constitution, but clearly invested in another and co-ordinate branch of the government.) Mr. Merrill, in his work on Mandamus (section 32), has this to say upon this subject: "The writ lies to make a body or officer charged with a duty involving judgment or discretion take action in the matter. When a subordinate body is vested with power to determine a question of fact, the duty is judicial, and, though it can be compelled by *mandamus* to determine the fact, it cannot be directed to decide in a particular way, however clearly it may be made to appear what the decision ought to be. . . . . It is said there is not a case where the king's bench has ordered an inferior court to render a particular judgment. When a decision has been reached in a matter involving discretion, a writ of *mandamus* will not lie to review or correct it, no matter how erroneous it may be." (See Merrill on Mandamus, sec. 32, and cases cited.) Had the district court limited its writ to a command to the board of examiners to proceed and pass upon the claim, we think there would have been no error; but, when the court went to the extent of commanding said board to act in a certain way, we think it was error. The action of the district court is reversed, and the cause remanded, with instructions to recall the peremptory writ, and issue a writ of mandate requiring and commanding the board of examiners to proceed and pass upon said claim, each party to pay his own costs.

Quarles, J., concurs.

SULLIVAN, C. J., Dissenting.—I cannot concur in the opinion of my associates. This is an appeal from an order and judgment of the district judge of the fifth judicial district granting a peremptory writ of mandate to the state board of examiners, commanding them to audit and allow two certain claims that the petitioner, as receiver of C. Bunting & Co., a corporation, held against the state for goods and merchandise

sold to it for use at its hospital for the insane situated at Black-
foot. One claim, for $813.43, was audited and duly allowed by
the board of directors of said hospital on the sixteenth day of
January, 1897. The claim for $482.45 was duly audited and
allowed by the board of directors of said hospital on the six-
teenth day of April, 1897. It is shown by the petition that the
state board of examiners have failed, neglected, and refused,
and still fail, neglect, and refuse, to audit and allow the said
claims, or either of them. An alternative writ of mandate was
issued commanding said board of state examiners to proceed and
audit and allow said claims, or to show cause why it had not
done so. Said board appeared, and demurred to said petition
on the following grounds: 1. That the petition did not state facts
sufficient to constitute a cause of action against the defendants;
2. That the court had no jurisdiction of the subject matter of
said action. Before a hearing was had on the demurrer an
amendment to the petition was filed, showing, among other
things, that said claim had been duly and regularly presented
to said board of state examiners, and that there had been held
numerous regular sessions of said board since the reception and
presentation of said claims to them, and at each and all of said
meetings said board of examiners had failed, neglected, and re-
fused, and still fails, neglects, and refuses, to audit or allow said
claims; that one C. Bunting, now deceased, was formerly treas-
urer of the state of Idaho, and was during his lifetime a stock-
holder in said corporation of C. Bunting & Co., and it is claimed
by said board that Bunting was short in his accounts as such
treasurer, and that plaintiff is informed and believes, and there-
fore avers the fact to be, that said alleged deficiency or short-
age in the accounts of said treasurer is the cause or reason for
the refusal of said board to audit and allow said claims; that
the petitioner has repeatedly made application to said board for
information in regard to the allowance of said claims, and has
been unable to get any information whatever on the subject.
After the amendment of said petition an amended alter-
native writ issued, and the defendant board appeared and de-
murred to the amended petition, and as grounds therefor re-
iterates the same grounds as are set forth in the demurrer above
referred to. The auditor of the state, J. H. Anderson, was made

a party, but, as the proceeding was dismissed as to him, we do not refer to him as a party to this appeal. The amended alternative writ commands said board to proceed and audit and allow said claims, or to show cause why they had not done so. The record shows that no return whatever was made to said amended alternative writ, and that, pursuant to notice duly given to counsel for defendants, the proceeding came regularly on for hearing on the eighteenth day of August, 1897, E. E. Chalmers, Esq., appearing for the plaintiff and no counsel for defendants. The defendants failed to answer or appear at the hearing. Thereupon judgment and order for a peremptory writ of mandate were made and entered, whereby said board of examiners was commanded, at its next regular meeting thereafter, to proceed and audit and allow said claims. Thereupon this appeal was taken from said order.

As the defendant board made no return to said writ, and stood on the demurrer, they thereby admitted all of the material allegations of the petition to be true. (*Henry v. Taylor,* 57 Iowa, 72, 10 N. W. 308; Merrill on Mandamus, sec. 40. As to return, see *Amperse v. City of Kalamazoo,* 59 Mich. 83, 26 N. W. 222, 409.)

The facts necessary to an intelligent understanding of this case, and as are shown by the petition, are substantially as follows: The Idaho Insane Asylum, located at Blackfoot, is under the management and control of a board of directors, consisting of three persons. (See Pol. Code, tit. 5, c. 1, sec. 750.) Section 752 of said chapter prescribed the powers and duties of said board. Subdivision 9 of said last-mentioned section is as follows: "To examine and audit the expenditures for salary of employees and all other expenses incident to the conduct of the asylum, and care and maintenance of its inmates, and if approved by them to certify the same to the state auditor." Section 753 of said chapter provides that all itemized bills of purchases, and other expenditures made, when examined by the board of directors, and found correct, must be certified by the president of the board, then to be transmitted to the state auditor, to be audited and allowed by him. Section 754 authorizes the board of directors to contract for all supplies required

for said asylum. It prescribes the manner of advertising for contracts to furnish such supplies, and provides that such contracts must be awarded to the lowest bidder. Section 6, article 10, of the constitution of Idaho, provides as follows: "There shall be appointed by the governor three directors of the asylum for the insane, who shall be confirmed by the senate. They shall have the control, direction and management of the said asylum, under such regulations as the legislature shall provide and hold their office for a period of two years. The directors shall have the appointment of the medical superintendent, who shall appoint assistants with the approval of the directors." Prior to the adoption of the constitution the legislature had enacted the laws prescribing the duties and powers of said board of directors in its management of said asylum, which laws were continued in force after the adoption of the constitution, so far as their provisions were not in conflict with the constitution.

It will thus be seen that a board of directors for said asylum is provided for by the constitution, and is given such powers as shall be prescribed by law. Said board is a constitutional board; that is, it is provided for by the constitution. The state board of examiners is also provided for by constitution. (Const., sec. 18, art. 4.) Said section provides that the governor, Secretary of State, and the attorney general shall constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law; and that no claim against the state, except salaries and compensation of officers fixed by law, shall be passed upon by the legislature without first having been acted upon by said board. In aid of said section of the constitution the legislature passed an act entitled, "An act relating to the board of examiners." (1st Sess., Laws 1891, p. 45.) Said act prescribes when regular sessions of said board shall be held, and the duties of said board. Sections 2 and 3 are as follows:

"Sec. 2. Regular sessions of the board shall be held on the first and third Tuesdays of every month, and special sessions at any time, if all the members are present.

"Sec. 3. It shall be the duty of the board to examine all claims against the state, except salaries and compensation of of-

ficers fixed by law, and except fixed appropriations for principal and interest of the public bonded debt, and except claims against the state already presented to the board and favorably reported by it to the legislature for passage. The board may approve or disapprove any claim or demand against the state, or any item thereof, or may recommend a less amount in payment of the whole, or any item thereof, and a decision of a majority of the members shall stand as the decision of the board."

Said act modifies to some extent the law prescribing the duties of the board of directors of the insane asylum (which law was enacted prior to the adoption of our constitution) in this, to wit: The claims audited and allowed by the insane asylum board must be sent to the state board of examiners for audit and allow-ance, instead of to the state auditor, which was done in this case. It is contended by the attorney general that said board is given absolute discretion over all claims against the state. They may audit or refuse to audit, allow or disallow, all claims against the state at their good pleasure, and, in case of disallowance, the claimant's only remedy is an application to some future legis-lature; and, in support of that view, he states the general rule that *mandamus* will not issue to control the discretionary power of a board. He attempts to surround said board with a halo of discretion that never was intended. Said board must pass upon said claims. It has no discretion in that matter. It is given a sound, legal, reasonable discretion in the allowance of claims. It is not a discretion that can be exercised in a capri-cious, arbitrary, oppressive, or wanton manner. The law re-quires said board to hold two regular sessions each month. Many regular sessions have been held since said claims were pre-sented to said board. The board has not only refused to act, but has refused to give to the petitioner any information in re-gard to said claims. They have seen fit to rest their case upon a demurrer, and upon the broad ground that the discretion given them is absolute, above and beyond the criticism or correction of any tribunal. In *Amperse v. City of Kalamazoo*, 59 Mich. 78, 26 N. W. 222, 409, the court says: "The respondents in this case have seen fit to rest their cause upon the broad ground that their action is above and beyond criticism of any other tribunal. Their answer assumes that they are sole arbiters of the relator's

rights. . . . . Whether they have any good reason for their action, for some cause, they refuse to inform us. In such case we can only assume that they acted arbitrarily and without reason." Common courtesy required said board to inform petitioner why they refused to audit and allow said claims; also the responsibility of meeting the matter set forth in the petition frankly, and stating the true reasons for refusing to allow said claim, rested with them. They have seen fit to refuse to do so, and have rested their case upon the broad ground of absolute discretion.

My associates hold that the writ must issue to compel said board to act, but that this court has no jurisdiction to direct how they shall act. I concede the general rule to be that a writ of mandate will not issue to direct a board how to act, but there are well-defined exceptions to the general rule, and this case comes within the exception. The admitted facts in this case clearly show that the refusal to allow said claims was on account of the misapprehension of the law, and in that case it is stated, in section 38 of Merrill on Mandamus, that the "officer could not be considered to have exercised his discretion in the matter." They misapprehended the law, in this: the board concluded that they had the authority to set off these claims against a claim which the state, it is alleged, has against a former treasurer. This, the law would not permit them to do. In the case at bar it is alleged in the petition, and admitted by the demurrer, that the reason of the refusal of said board to allow said claims is that C. Bunting, former treasurer of the state, was short in his accounts with the state, and the intention of said board was to offset said claims against said shortage. Said board has no power or authority to make said offset. That fact clearly shows that said board misapprehends the law, and, according to the rule laid down by the authority last cited, the writ should issue. As to setoff, see *Danley v. Whiteley,* 14 Ark. 687.

To illustrate: Supposing the board has said, by way of return to the writ, that the claims are just and proper, but, "as we have discretion to allow or disallow them, we shall exercise that discretion, and refuse to allow them"; would it be contended for a moment that the writ should not issue to compel them to do what they admit to be their duty, simply because they have discretion? I think not. Thus, in this case, by the

demurrer, it is admitted that the claims are just and should be allowed, but that an offset is intended, which under the law the board has no power to make. The board admits that a legal contract was made by the board of directors of the insane asylum for the purchase of supplies for that institution; that the state has accepted, received, and used the supplies purchased under said contract; that said asylum board had audited and allowed said claims. No question is raised as to the fairness and legality of the said contract and the whole transaction. Money has been appropriated by law to pay for such supplies. The law enjoins payment. The absolute discretion invoked in favor of the board is repudiation, pure and simple. It is not sufficient to say that the petitioner has a remedy by resorting to some future legislature. That is not the plain, speedy and adequate remedy, in the ordinary course of law, referred to in section 4978 of the Revised Statutes. It is more a political remedy than a plain, speedy, and adequate remedy, in the ordinary course of law. (High on Extraordinary Remedies, secs. 17, 20, 104; *People v. Mayor etc. of New York,* 10 Wend. 395.) It was not intended that the payment for supplies furnished the insane asylum, under legal contract made by the asylum board, and for the payment of which an appropriation had been made by law, should, by the arbitrary action of said board, be relegated to the uncertain action of future legislatures. Such arbitrary discretion would place the state at great disadvantage in making contracts, and would prevent business men from entering into contracts with the state, unless they knew that the board would allow their claims. The constitution and law confers on said board a sound legal discretion in passing upon claims. Its plain duty, under the law, is to audit and allow all legal claims against the state, not to reject them. The discretion given them has been exercised, and, under the exercise of that discretion, they admit the claims are legal and just, but an offset is intended. That being admitted, their duty thereafter is only ministerial. They must allow them. What is the plain duty of said board, after they have admitted that a claim is legal and just? Is it to arbitrarily disallow it? I think not. Discretion, carried to that extent, is characterized by the court of appeals of Colorado, in *Board of Commissioners of Grand Co. v. People,* 8 Colo. App. 43,

46 Pac. 109, as "another name for the gaunt specter of repudiation." At section 48 of Merrill on Mandamus it is stated that when, however, in a *mandamus* proceeding, the respondent admits the existence of the facts, concerning the determination of which alone was any judgment or discrimination authorized on his part, his duty becomes ministerial, and the writ of *mandamus* will issue to compel its performance." (*State v. Murphy,* 19 Nev. 89, 6 Pac. 840; *Wood v. Strother,* 76 Cal. 545, 9 Am. St. Rep. 249, 18 Pac. 766; *State v. Board of Commissioners of Lander Co.,* 22 Nev. 71, 35 Pac. 300.) Apply that rule to this case. The fact of the legality of the claims is admitted. It then becomes their ministerial duty to allow them. They then have no discretion to capriciously, arbitrarily, oppressively, or wantonly disallow them. (*Railroad Co. v. Stockton,* 51 Cal. 328; *State v. Board of Livestock Commrs.,* 4 Wyo. 126, 32 Pac. 114; *McLeod v. Scott,* 21 Or. 94, 26 Pac. 1061.) It is urged that said board has not refused to allow said claim. That fact is alleged in the petition, admitted by the demurrer, and the attorney general urges as a defense for the board that it has absolute discretion in said matter. That is the only defense in this case—"absolute discretion." The honor of the state is at stake. It has made a solemn contract, under and by the terms of which it has taken possession of private property, and put it to a public use, and has made an appropriation with which to pay said claims. Under that state of facts (which are all admitted by the demurrer and a refusal to make any return to said writ), is the board given absolute discretion to refuse to allow said claim? Every principle of honesty and justice would say, "No." Said board and the state are bound by the same rules of common honesty and justice which bind individuals. (See *Danolds v. State,* 89 N. Y. 36, 42 Am. Rep. 277.) The discretion given must be governed by honesty, not by humor or prejudice. (Merrill on Mandamus, sec. 62.) Under the facts of this case, said board admits the justness and legality of said claims, and there remains only the ministerial duty of their allowance of said claims, which must result from the conclusion reached by them, and a peremptory writ should issue to compel them to do so.