### KOON et al. v. BOTTOLFSEN et al.
### No. 2333.

District Court, D. Idaho, S. D.
April 16, 1944.

Walter H. Anderson, of Denver, Colo., for plaintiffs.

Frank Langley, Atty. Gen., of Idaho, and John R. Smead and P. J. Evans, Asst. Attys. Gen., of Idaho, for defendants.

CLARK, District Judge.

This action is for a declaratory judgment, brought by E. K. Koon, Frank Barmettler and American National Bank, citizens of Colorado, against C. A. Bottolfsen, Edwin M. Holden and L. E. Glennon, residents of the State of Idaho. The action was filed March 6, 1945.

It is alleged in the complaint that the jurisdiction of the Court depends upon diversity of citizenship of the parties and Section 400 of 28 U.S.C.A.

It is further alleged that Bottolfsen, Holden and Glennon comprise the Idaho Code Commission by virtue of Chapter 103 of the Idaho Session Laws of 1943, and

that on the 23rd day of June 1943 the said E. K. Koon, doing business under the name of Courtright Publishing Company, entered into a contract with the Idaho Code Commission composed of the defendants Bottolfsen, Holden and Glennon, and a copy of the contract is attached and made a part of the complaint. The contract is in words and figures as follows:

### "Contract

"This agreement, Made and entered into this 23rd day of June, 1943, by and between the State of Idaho, acting through its present Governor C. A. Bottolfsen, the Chief Justice of the Supreme Court of the State of Idaho, Edwin M. Holden and L. E. Glennon, the present President of the Idaho State Bar, being the 1943 Code Commission, as party of the first part, and E. K. Koon, doing business as Courtright Publishing Company, party of the second part, witnesseth:

"That whereas, the Twenty-Seventh Legislature of the State of Idaho enacted a law known as Chapter 103 of the Session Laws of 1943, providing for the compilation, annotation, and publication of the Codes and Statutes of the State of Idaho;

"And whereas, by the provisions of said law, the present Governor of the State of Idaho, C. A. Bottolfsen, one member of the present Supreme Court of the State of Idaho, to be selected by the Supreme Court, which member was regularly selected and is the present Chief Justice of the Supreme Court of the State of Idaho, Edwin M. Holden, and present President of the Idaho State Bar, L. E. Glennon, were created a 1943 Code Commission and directed to compile, annotate, and publish the Codes and Statutes of the State of Idaho, under the provisions of said Chapter 103;

"And whereas, said persons met and organized by the selection of C. A. Bottolfsen, as President, and L. E. Glennon, as Secretary, in accordance with said law, and thereafter called for bids for making said compilation, annotation, and publication of the Codes and Statutes of the State of Idaho.

"And whereas, The said persons met together in the office of the Governor of the State of Idaho, at two-thirty o'clock P. M. on the 30th day of April, 1943, the hour appointed for considering bids, and there received and considered bids, and recessed to the 7th day of May, 1943, at 2:30 P. M., on which day the Commission again recessed to the 17th day of May 1943, at 2:30 P. M.

"And whereas, at a meeting of said Commission on the 17th day of May, 1943, the first party rejected all bids, and thereupon decided to negotiate a contract for the compilation, annotation, and publication of said code.

"Now, therefore, in accordance with the authority granted by Chapter 103 of the 1943 Session Laws of the State of Idaho to compile, annotate and publish the Codes and Statutes of the State of Idaho, which compilation shall contain the Constitution of the United States and of the State of Idaho, Magna Charta, the Declaration of Independence, the Organic Act of the Territory of Idaho, the Act admitting Idaho into the Union, the laws of the United States providing for the naturalization of citizens, statutes of the United States relative to the authentication of records, the laws of a permanent and general nature of the State of Idaho, including the enactments of the 27th Session of the Legislature of the State of Idaho shall be annotated by notes and references to the decisions of the Supreme Court of the State of Idaho, the Federal Courts and the Supreme Court of the United States, citing or construing the same; the history of each particular section of the Constitution and Statutes of the State of Idaho and constitutional provisions and statutes of other states of identical or similar character, and the Uniform Laws and American Law Institute compilations, together with a thoroughly serviceable, complete, accurate, modern index to the Constitution of Idaho and the general laws of the State of Idaho. It shall contain also a parallel reference table to the origin of each such law through the various compilations and codifications of such law, including the Revised Statutes of 1887, where the origin of such law relates back thereto, as well as a special index of special laws, and such other ancillaries as the party of the second part, with the consent of the party of the first part, may deem proper to include.

"The party of the second part contracts that the 1943 Code shall be edited, compiled, annotated, published and strongly bound and re-inforced with first-class backing flannel (not super), strongly sewed, using DuPont fabricoid or buckram binding, such Code to be printed in 10-point

type· on a 10-point slug, with notes and annotations in 8 point type on an 8-point slug, and on the best quality 45 pound book paper. The overall page dimensions shall be 7" x 10" and the type page 4–7/8" x 8–1/8", or 29 x 49 Picas. Other materials (as substitutes for unavailable specified materials) shall be used only if mutually agreed to by the parties hereto.

"Said Code shall be published in six (6) volumes, including the index. The arrangement of the material therein to be such as to include related material in each volume so far as possible, without pocket supplements or binding adapted to the use thereof. The general style and arrangement shall be the same as the Idaho Code Annotated 1932, the text being ·printed in one column, with annotations and notes in double column.. This compilation shall be entitled and called 'Idaho Laws Annotated 1943', or such other similar name as may be designated ·by the said Commission.

"Each volume shall contain a thoroughly serviceable, complete index thereof, with complete cross references covering all subject matters in each volume; also a complete, full first-class, thoroughly serviceable index in the last volume, which shall cover the entire Code, together with a table of parallel references to omitted laws of Idaho.

"The procedure to be followed in the printing, binding, and publishing of this Code shall be as follows: The second party shall furnish the secretary of this Commission with 'galley' proof copies of the various material to be included in such compilation, including annotations and footnotes for approval by the first party, which shall have been first carefully proof-read and corrected by the second party before forwarding the same to said secretary, and the secretary shall then check such 'galley' proofs, correcting errors therein, if any, and return the proofs to the publisher, who shall make such corrections as have been noted, and shall then forward to the Secretary of the Commission 'page' proofs which the secretary shall check for errors and return to the publisher for correction of such errors as have been noted. notwithstanding the checking of the 'galley' proofs and 'page' proofs by the secretary of the first party, the responsibility for the correction of all errors therein shall never-

theless, be the sole responsibility of the second party.

"Second party further agrees to compile, annotate,' and publish the said completed work in the form prescribed by the first party as herein outlined, and have the same bound and ready for delivery for the use of the State of Idaho and its municipalities and subdivisions on or before the first day of July, 1944. Provided, that if the party of the second part shall, without negligence or fault on its part, be delayed because of inability to obtain materials or labor, as specified in this contract, or because of war, Federal priorities, strikes, or other causes beyond its control, then in every such event the period of delay so caused shall be added to the time herein specified for the completion of the work, and the party of the second part shall not be in default if such work shall be completed within the stipulated time, increased by a period of time equal to the duration of such delay.

"Upon the approval of the said compilation by the first party the second party shall immediately print, bind, and deliver to the Secretary of State, at Boise, Idaho, transportation prepaid, 1,000 sets of six (6) volumes each of said publication, at Forty ($40.00) dollars per set, lawful money of the United States.

"The contract price for the sets of such Code to be furnished to the State of Idaho shall be paid as follows: Upon the approval of Volume I by the first party, the sum of Five Thousand ($5,000.00) Dollars. Upon the approval of Volume 2, a like sum of Five Thousand ($5,000.00)· Dollars. Upon the approval of Volume 3, the sum of Five Thousand ($5,000.00) Dollars. Upon the approval of Volume 4, the sum of Five Thousand ($5,000.00) Dollars. Upon the approval of Volume 5, the sum of Five Thousand ($5,000.00) Dollars; and upon the approval of Volume 6, or within thirty days thereafter, the balance of the contract price. All such payments are to be made in warrants drawn upon the code fund provided in Chapter 103 of the Session Laws of 1943, and the appropriation provided for therein.

"Second party further agrees to deliver to the Secretary of State, at Boise, Idaho, transportation prepaid, additional sets of said Code for the use of the State in lots of Twenty-five or more, at the price of Forty ($40.00) Dollars per set.

"The party of the second part further agrees to provide a sufficient number of sets of said Code to supply the public demand therefor within the State of Idaho, at a price of Forty ($40.00) Dollars per set, cash on delivery to the purchaser thereof, within the State of Idaho, but the party of the second part shall not be limited to any specific charge for any sets delivered or sold outside the State of Idaho.

"Second party further agrees to secure a copyright on the annotations, references and notes used in the codification provided for herein and to assign the same to the State of Idaho for its use and benefit in the preparation of any · recodification of the laws of the State of Idaho.

"That within five days from and after the execution of this contract the second party shall file with the secretary of the first party a surety company (not a personal) bond in the penal sum of $25,000.00 (which bond shall be subject to the approval of the first party) for the faithful performance of each and all of the terms and conditions of this contract to be done or performed by the party of the second part; that either the failure of the second party to so file said surety bond or the disapproval of said first party of any surety bond so filed shall at once operate to cancel and annul this contract.

"That the chief of the editorial staff of the second party whose name has been filed with, submitted to and approved by the first party shall have the selection of the editorial staff whose duty it will be, among other things, to edit, annotate and index the Idaho 1943 Code as herein provided for; that the said chief of the editorial staff cannot be changed by the second party without the written consent of the said party of the first part; that any change of the Chief of the editorial staff of the second party, without the written consent of the first party shall work a cancellation and annulment of this contract and a forfeiture of the said sum of $25,000.00.

"The party of the first part agrees to furnish to party of the second part without cost the following, to-wit: Three complete sets of the "Idaho Code Annotated 1932"; three complete sets of the Idaho Session Laws of the Idaho State Legislature issued since the year 1932, including the Session Laws of 1943.

"In witness whereof, The said party of the first part, acting by and through the said C. A. Bottolfsen, Edwin M. Holden and L. E. Glennon, composing "The 1943 Code Commission", and the party of the second part have signed and executed this contract in triplicate.

"State of Idaho
"By _____
　　"Governor of the State
　　　of Idaho
"By _____
　　"Chief Justice of the
　　　Supreme Court of the
　　　State of ·Idaho.
"By _____
　　"President of the Idaho
　　　State Bar.
"Party of the First Part.

"By _____
"Party of the Second Part."

. The plaintiffs further allege "that due to labor and war conditions within the meaning and purview of said Exhibit A, the said code has not been completed, and said defendants composing the Code Commission have refused to extend the time until authorized by the Legislature of the State of Idaho so to do.

"That volume one of said Code has been delivered to the State of Idaho and is now in the possession of the Secretary of State, and is in all respects in accordance with Exhibit A hereto, but that notwithstanding said 1,000 bound copies of volume one have been delivered to the Secretary of State, the said Code Commission has declined, neglected, failed and refused to pay therefor.

"That practically all of the editorial work and work of compiling has been done on the entire set of codes and volume two is now in type and part of volume three is set in type, but said work of printing and binding has been held up on volume two awaiting the giving by the Code Commission of authority on the part of some one to read and approve said work and okey the proofs so the same can be printed and bound.

"That volume one of said Code was approved by Sam S. Griffin, Esq., under authority of the Code Commission, but that said Sam S. Griffin has resigned his employment by the Code Commission, and

there is no one, insofar as the plaintiffs have been advised, authorized to okey the proofs on said Code so that the same may be completed, and this condition has not obtained for more than three months next before the filing of this complaint.

"That said Code Commission has full power and authority to extend the time and carry out said contract for the publication of the code authorized by Chapter 103 of the Idaho Session Laws of 1943, and that in truth and in fact no further legislation is needed or required for the Code Commission to perform its duties and carry out said contract.

"That after making of said contract, an interest therein was assigned by said Koon to plaintiffs American National Bank and Frank Barmettler, and the plaintiffs now jointly own said contracts and all rights thereunder.

"That said Code Commission contends that the appropriation provided for in said Chapter 103 of the Idaho Session Laws of 1943 will pass into the general *fund if expended,* but the plaintiffs deny this contention and assert that said appropriation is a special one and will remain to be applied to the purposes set forth in said Chapter 103 and *is subject* to the provisions respecting unexpended appropriations passing into the general fund.

"That a justiciable controversy exists between the plaintiffs on the one hand and the defendants composing the Code Commission on the other, in that the plaintiffs, contend that the defendants composing the Code Commission have full power and authority to edit, compile and annotate said code, the printing, publication and binding thereof under and by virtue of the authority conferred upon said Code Commission by said Chapter 103 of the Session Laws of the Idaho Legislature of 1943, but that said defendants composing the Code Commission deny they have such authority and refuse to do anything without some legislative action by the Idaho State Legislature, which is being blocked and prevented from acting through the malicious efforts of said Ralph York and Syms-York Company, all to the great damage and detriment of these plaintiffs.

"That therefore the controversy arises, and these plaintiffs are compelled to enter this Honorable Court and ask an adjudication, stabilization and fixing of their rights, duties and liabilities along with the rights, duties and liabilities of the defendants.

"That it is impossible for any person other than the plaintiffs to complete this code, for the reason that the plaintiff Barmettler has purchased and now has on hand 45-pound paper sufficient in quantity to complete said code, and in addition thereto has purchased and now has on hand fabricoid binding, materials sufficient to bind said code when completed; that these materials are not now obtainable at all at any place. That the War Production Board has so restricted the use and disposition of these materials that only 30 pound paper is now permitted, and the binding materials are not obtainable in any quality or quantity whatsoever.

"Wherefore, plaintiffs pray judgment against the defendant Code Commission declaring, fixing and stabilizing the rights of the plaintiffs and duties, rights and responsibilities of said defendants composing said Code Commission, and that it be declared that it is the duty, power and authority of said Code Commission to complete said Code under the present existing authority of Chapter 103 of the 1943 Session Laws, and it be declared to be the duty of said Code Commission to forthwith pay the plaintiffs the sum of Five Thousand and no/100 ($5,000.00) Dollars, in accordance with the terms of said Exhibit 'A'; that the law with reference to appropriations passing into the general fund be declared inapplicable to the appropriation herein, and that the plaintiffs have such other orders in the premises as shall seem meet and proper to carry into effect the above prayed for declaration of rights and for costs and general relief."

The defendants have moved the dismissal of the complaint alleging that it fails to state a claim against these defendants and that is the question now before the Court for decision.

■ The complaint and contract are fully set forth as alleged and necessarily these facts are admitted for the purpose of this hearing on the motion to dismiss.

At the onset the Court is of the opinion that it would be justified in refusing to pass on the merits of this case and declare the rights of the parties, as such declaration would not terminate the litigation or bar the rights under the contract which might hereafter be asserted.

■ A "declaratory judgment" should settle the entire controversy; that can-

not be accomplished in the present action and the Court should dismiss it.

■ There are, however, more controlling reasons why the motion to dismiss must be sustained. The action filed herein is against the defendants in their individual capacity and not as officers of the State. The defendants were acting as a code commission; they were not acting in their individual capacities. They were the duly authorized officers and agents of the State performing duties imposed on them by the Statute which created the Commission, and accordingly the contract was between the State and the contracting publishers, and the contract so recites.

Any judgment entered in this action would not be binding against the State of Idaho, and certainly the contract sued upon is between the State of Idaho and the plaintiff Koon.

Chapter 103 of the Session Laws of 1943 provides for the compilation of all statutes of the State of Idaho, creating what is designated as the 1943 Code Commission composed of the then Governor of the State of Idaho; one member of the Supreme Court of the State of Idaho, and the then president of the Idaho State Bar, to effect such compilation, and authorizes the Commission to enter into a contract for the compilation thereof.

Section 1 provides for the compilation, annotation and publication of all codes and statutes.

Section 2 provides for a contract for the publication of the statutes and codes authorized.

Section 3 provides for the letting of the contract.

Section 4 provides for the number of sets to be printed and the sale price.

Section 7 provides for the delivery of the Codes to the Secretary of State.

Section 8 provides for the levy of the tax and the tax money to be delivered to the State Treasurer.

Section 9 provides for the issuance of Treasury notes to be signed by the President of the 1943 Code Commission, attested by the Secretary thereof, and to be countersigned by the Treasurer of the State of Idaho.

Section 10 provides that the Treasury notes should be sold by the State Treasurer.

Section 11 provides that the Treasury notes should constitute a contract between the State of Idaho and the owners of any of said Treasury notes.

Section 12 provides that the proceeds of the sale should be placed to the credit of the fund in the hands of the State Treasurer and provides that the State Treasurer should keep a separate account of all moneys collected under the taxes and fees imposed by the Statute.

Section 13 provides for the appropriation out of the State Treasury from these funds for paying for the statutes and the expenses of the Commission.

Any claim for payment for the Codes in question must be presented to the State Auditor and he is permitted only to draw a warrant in payment thereof after such claim has been authorized and approved by the State Board of Examiners. This is the only method by which money can be obtained from the State Treasury. This is fully covered by Chapter 20, Title 65, volume 3, I C A.

Section 10, Article 5 of the Constitution of the State of Idaho provides that the Supreme Court shall have original jurisdiction to hear claims against the State, and the Supreme Court of Idaho in the case of Pyke v. Steunenberg, 5 Idaho 614, 51 P. 614, held that they will not hear any claims against the State until the same have been passed upon by the Board of Examiners. Also see Curtis v. Moore, 38 Idaho 193, 221 P. 133. In the instant case the defendants could not make payment of the $5000.00 that this Court is asked to declare that it is their duty to make, nor could they make any payment for the codifying of the laws under the contract in question or any of their expenses contracted in doing so except by compliance with chapter 20, I C A, as hereinbefore cited.

Any action to compel these defendants to pay a claim from a State fund is an action against the State and although these defendants, if they were in Court in their official capacity instead of their individual capacity could approve the claim, yet in the final analysis the suit cannot be entertained against them to force the State to make payment. A suit cannot be brought against them even in their official capacity as representing the State's action so that any judgment entered against them would compel the State to perform any obligation of the State.

322

The Eleventh Amendment of the Constitution of the United States provides as follows:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."

This provision of the Constitution cannot be defeated by bringing an action of this kind against the defendants who have no personal interest in the subject matter of the suit, when the relief prayed for against them, if granted, would require them to perform certain acts that are obligations of the State to perform. The defendants herein are not the real parties in interest, any judgment rendered would of necessity be directly against the State and its moneys. The Constitutional bar provided by the Eleventh Amendment cannot be indirectly set aside by suing the officers of the State individually where the claim for relief is an alleged breach of the State's contract.

It is well settled that Federal Courts are without jurisdiction to entertain such a suit.

As stated by counsel for appellee in the case of Lankford v. Platte Iron Works, 235 U.S. 461 at page 463, 35 S.Ct. 173, 59 L.Ed. 316: "The case is not one in which it is sought to move the officer through the State but on the contrary the State is sought to be moved through its officers. Of this, the court has no jurisdiction, as it is a violation of the Eleventh Amendment." Also see: State of Louisiana ex rel. Elliott v. Jumel, 107 U.S. 711, at pages 722 and 723, 2 S.Ct. 128, 27 L. Ed. 448. Ex parte Ayers et al., 123 U.S. 443, at pages 488 and 489, 8 S.Ct. 164, 31 L.Ed. 216. State of Missouri v. Homesteaders Life Ass'n, D.C., 16 F.Supp. 69, at page 71. North Carolina v. Temple, 134 U.S. 22, at page 30, 10 S.Ct. 509, 33 L. Ed. 849.

"As to what is to be deemed a suit against a state, the early suggestion that the inhibition might be confined to those in which the state was a party to the record (Osborn v. Bank of United States, 9 Wheat. 738, 846, 850, 857, 6 L.Ed. 204) has long since been abandoned, and it is now established that the question is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record." Ex Parte State of New York et al., 256 U.S. 490, at page 500, 41 S.Ct. 588, at page 590, 65 L.Ed. 1057.

It is contended by counsel for the plaintiffs that through appearance made by the defendants in this action that the defendants in this case have waived the right to urge the action as against the State and that the immunity of the State from suit is a personal privilege and is waived by the appearance filed herein. There is no merit in this contention. "The defendants in the present cases, though officers of the state, are not authorized to enter its appearance to the suits and defend for it in its name. The complainants are not entitled to compel its appearance, for the state cannot be sued without its consent. And the court cannot proceed to the determination of a cause and controversy to which the state is an indispensable party without its presence." Hagood v. Southern, 117 U.S. 52, at page 71, 6 S.Ct. 608, at page 617, 29 L.Ed. 805.

The motion to dismiss will be sustained and an order will be entered.