NILES BRYANT SCHOOL OF PIANO TUNING *v.* BAILEY.

1. Municipal Corporations—Appropriations—General Fund—. City Hall Site—Public Buildings and Improvements.
   A city having by charter authority to assess and levy taxes only for the purposes of street improvements, ordinary expenses, and to pay debts, is limited to such purposes in the apportionment of taxes and in the expenditure of the funds received from them.

2. SAME—APPROPRIATIONS—PAYMENT OF INDEBTEDNESS.

> After funds received from taxes have been apportioned by the common council to various funds created by ordinance, without any provision being made to pay for a city hall site bought on contract by the city, no money can be ordered paid on the contract from the general fund, which had been reduced to a small amount, consisting in part of funds payable to support libraries, and which was made up of the same and of taxes levied for other purposes, the charter prohibiting the use of city funds except upon previous appropriations specifying the purposes.

3. SAME—WORDS AND PHRASES.

> Such expenditure of funds is not for ordinary municipal expense.

4. SAME—MANDAMUS.

> The writ of mandamus will not run to compel the mayor to sign a warrant for the payment of funds from the city treasury on the contract in the absence of provision therefor by appropriation, taxation or issuance of bonds. Const. of 1909, art. 11, § 14.

5. SAME—WARRANTS—PRESUMPTIONS.

> It appearing that an amount larger than the apportionment of taxes for the general fund had been paid out of it, no presumption can arise that the order of the council upon the general fund was valid or the fund sufficient to pay the order.

Certiorari to Calhoun; Chester, J., presiding. Submitted April 19, 1910. (Calendar No. 23,962.) Decided April 30, 1910.

Mandamus by the Niles Bryant School of Piano Tuning to compel John W. Bailey, mayor of the city of Battle Creek, to sign a warrant for the payment of an installment due on a land contract. An order granting the writ is reviewed by respondent on writ of certiorari. Reversed, and writ dismissed.

*Ira A. Beck* (*Arthur B. Williams*, of counsel), for relator.

*John W. Bailey* (*William E. Ware*, of counsel), *in pro. per.*

McALVAY, J. These proceedings arise on account of a claimed purchase, by the common council of the city of Battle Creek, of a certain tract of land within its limits for a city hall site, upon a written contract with petitioner, for the sum of $30,000, and the exact controversy relates to the refusal of respondent mayor to sign a warrant on the treasurer of said city "for the sum of $10,000, for part payment upon the purchase price of the proposed city hall site." Demand that he sign the warrant was made upon respondent in writing by relator, and was refused. After the refusal of the respondent to sign the warrant for $10,000, as herein stated, relator filed a petition in the circuit court for Calhoun county, praying for an order to show cause why a peremptory writ of mandamus should not issue requiring him to sign such warrant. He answered said petition, and the hearing of the matter resulted in granting the prayer of the petition. The case is before this court upon a writ of certiorari by respondent to review the mandamus proceedings. The errors assigned, other than those that go to the regularity of the proceedings, which require discussion, briefly stated, are:

(1) No appropriation had been made by lawful authority to pay for a city hall site, and therefore there was in the treasury no funds upon which a warrant could be drawn to pay such indebtedness.

(2) The charter provides the manner for raising money to pay such indebtedness, by certain official action, and such action had never been taken, therefore that the warrant was not a lawful one, and respondent had no authority to sign it, and the court was in error in ordering the writ of mandamus to issue to compel him to sign it.

By its charter the city has general authority to assess and levy taxes only for three purposes: (1) To be used for general street improvements; (2) for ordinary municipal expenses; (3) for paying debts. By ordinance, different funds of the city, to the number of 16, were established and denominated, and among the names given to these different funds was one called "General Fund." This ordinance further provided:

"The money appropriated to the various funds shall be used for the payment of indebtedness incurred for improvement, expense or other cost to which the respective fund applies as defined herein, to wit:   *   *   *

"Q. General Fund—All expenditures of the city of Battle Creek not otherwise provided for in this ordinance."

Whether these funds named by ordinance cover all matters included in the three purposes for which the city authorities were entitled to levy general taxes, need not be considered, for the reason that the council would be limited by the grant of power given by the charter, as to the purposes for which it might lawfully apportion the taxes to be raised, and also for the purposes and in the manner which it might expend the money of the municipality received from taxes or other sources.

For the year 1909 the council of the city of Battle Creek, on July 28, 1909, ordered the following general taxes to be levied: (1) For general street purposes, $43,864.62; (2) for ordinary municipal expenses, $134,614.81; (3) for paying indebtedness of the city, $13,864.62. All of these general taxes assessed for that year were, on August 9th, according to the report and recommendation of the ways and means committee, theretofore made, appropriated, and apportioned to the various city funds, but no provision by such appropriation was made to pay for the land in question contracted for with relator December 21, 1908, for a city hall site. The details of these appropriations for different purposes to the different funds, other than as they relate to this general fund, are not important, for the reason that, if this warrant could not lawfully be paid from the general fund, it is admitted that it could be paid from no other fund. Of these general taxes for 1909 it is admitted that under this apportionment and appropriation $14,544.72 was placed in the "General Fund."

The record contains the sworn statement of the city treasurer, made in an affidavit filed in support of some motion, from which it appears that the general taxes

raised according to the foregoing statement "*for ordinary municipal expenses*" were distributed to the following funds named in the ordinance: Salary; police; fire; public health and charity; plumbing; printing; lighting; general. That at the time said statement was made by the city treasurer, all of said funds, except the general fund, were practically exhausted, and the balance on hand in that fund was $11,250.40; it having been reduced to that amount by orders under the authority of the council. Besides the amount of taxes apportioned to this fund, it was made up, among other things, of fines, penalties, and forfeitures collected by the municipal and recorder's courts. What part or percentage of this fund is so made up does not appear. The charter provides that:

" No money shall be drawn from the treasury unless in pursuance of previous appropriations specifying the purpose thereof; and any order or warrant directing or requiring the payment of the same shall specify the object and purpose of such payment, and shall be signed by the recorder and countersigned by the mayor of said city." Section 1, chap. 32, Act No. 430, Local Acts 1899.

The taxes apportioned to this fund levied in the year 1909 were taken from taxes levied *for* "*ordinary municipal expenses.*" The construction of the council as to what may be considered ordinary municipal expenses appears from the list of the funds into which such taxes were distributed. No fault can be found with such construction. It is a reasonable one. The purposes of all such funds above named are to defray ordinary municipal expenses. The taxes so levied and put into what is called a "general fund" cannot be diverted thereby to anything other than ordinary municipal expenses because the ordinance provides that such fund shall be used to pay "all expenditures of the city of Battle Creek not otherwise provided for in this ordinance." In other words, the council by ordinance cannot contravene the provisions of the fundamental law under which the city is incorporated. Contracting an indebtedness of $30,000

for the purchase of a city hall site is not an ordinary municipal expense. No argument is necessary to show that it is an extraordinary expenditure of municipal funds. It follows that the moneys arising from taxes levied "for ordinary municipal expenses" cannot lawfully be used for such purpose. It is urged that moneys derived from sources other than taxation remaining in this fund are sufficient to pay this warrant. There was put into this fund taxes as stated, all fines, forfeitures, and penalties, per cent. on taxes collected, etc. These moneys were all commingled into one fund, and paid out as ordered by proper authority. We have said that the money taken from this tax levy could not be used for this purpose. The amount of fines, penalties, and forfeitures is not stated, but is considerable. Under the present Constitution of Michigan all such fines, penalties and forfeitures, "collected in the several counties, cities and townships shall be exclusively applied to the support of libraries." Const. art. 11, § 14.

While it appears that an amount larger than the amount of taxes apportioned to this fund has been paid out of it, the court can indulge in no presumption, conceding that the order was a lawful one drawn on the proper fund, that there was sufficient remaining in the fund lawfully subject to such use, having the knowledge that a large part of it was not. The action of the council in drawing the warrant would not be conclusive, or even presumptive, that there was. Relator's argument is based upon the claim that ordering this indebtedness represented by this warrant to be paid out of the general fund was an *appropriation* within the meaning of the prohibition and requirement of the charter above quoted relative to drawing money from the city treasury, and permitted by the ordinance. The fallacy of this contention must already appear. The provisions of the charter must control. This action of the council was not an appropriation contemplated by the charter, as construed by us, nor as construed

by the city authorities when they made up the budget for the general tax levy for 1909, and appropriated and apportioned such taxes. This indebtedness was not at that time taken into consideration, or in any manner provided for.

The determining question, then, in the case is whether any warrant could lawfully be issued to pay this claimed indebtedness, in view of the prohibition of the statute already quoted that—

"No money shall be drawn from the treasury unless in pursuance of previous appropriations specifying the purpose thereof."

Whether this contract is a valid and binding contract is a question upon which we do not find it necessary to express an opinion. It is certain that, if it is valid, this indebtedness can only be paid in such manner as the charter permits and provides. We find that the charter authorizes the council to purchase and hold real estate for corporate purposes. Chapter 10, § 7, subd. 59. The price to be paid for such real estate would be an indebtedness of the municipality. Provision is made for the payment of any indebtedness in only two ways: By taxation (chapter 28, § 2); by issuing bonds (chapter 30, § 1). This indebtedness having been determined by us not to be included within "ordinary municipal expenses" provided for in the charter, and no action having been taken to provide for it by any appropriation, or under either of the two methods last above mentioned, our conclusion is that the order was unlawfully issued, and the respondent could not be compelled to sign such warrant. *Smith* v. *Auditor General*, 80 Mich. 205 (45 N. W. 136).

Much appears in the record and briefs relative to what steps the council had taken to ascertain public sentiment upon the question of which of several city hall sites should be purchased. These matters have no bearing upon the questions involved in this case.

The court was in error in granting the writ of manda-

mus. The judgment of the circuit court is reversed and set aside, and a judgment will be entered in this court in favor of respondent and against relator, with costs of both courts.

OSTRANDER, BROOKE, BLAIR, and STONE, JJ., concurred.