(No. 6447. May 25, 1937.)

STATE on the Relation of HENRY HANSEN, Plaintiff, v. HARRY C. PARSONS, State Auditor of the State of Idaho, Defendant.

[69 Pac. (2d) 788.]

C. S. Hunter, for Plaintiff.

J. W. Taylor, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Defendant.

Charles F. Reddoch, J. R. Smead and Jess B. Hawley, *Amici Curiae* on petition for rehearing.

AILSHIE, J.—The regular legislative session of 1933 enacted chapter 56 of the 1933 Sess. Laws, by which it appropriated for the use of the State Industrial Insurance Fund the following specific amounts for the ensuing biennium:

"For salaries and wages the sum of $60,880.00, to be classified for the biennium as follows:

| | |
|---|---|
| Salary of regular officers and employees | $58,800.00 |
| Extra help and per diem employees | 1,080.00 |
| Expert and special | 1,000.00 |
| | |
| Services Other Than Personal | $10,605.00 |
| Supplies | 2,820.00 |
| Equipment | 2,520.00 |
| Fixed charges and contributions | 1,618.00 |
| | |
| TOTAL for salaries and wages and all other expenses | $78,443.00" |

It appears that this fund became exhausted in the latter part of 1934 and the department was without sufficient means to continue its regular administration, and thereupon contracted certain debts in excess of any specific appropriations therefor, among which is the claim here involved. Plaintiff is assignee of the claim. The claim was never passed upon by the State Board of Examiners prior to the legislative action hereinafter recited.

March 8, 1935, Governor Ross called the legislature into special or extraordinary session and during that session and on April 1, 1935, it enacted chapter 46, 1935 Session Laws (1st Ex. Sess.), which was thereupon approved by the Governor. *Subsequent* to the enactment of chapter 46, the State Board of Examiners met, all members being present, and examined and approved the claims here involved and instructed and directed the state auditor, defendant herein, to issue warrants of the State of Idaho in payment thereof. Acting on the advice of the attorney general, the auditor refused to issue a state warrant in payment of the claim and predicated his refusal on the ground that he was advised that chapter 46 of the 1935 Session Laws (1st Ex. Sess.) was, and is, unconstitutional and void and that he could not lawfully issue such warrant.

The only question with which we are confronted is: Did the legislature have the constitutional power to enact chapter 46 (House Bill No. 74), First Extraordinary Session of the Legislature of 1935?

The preamble to this act carries on its face the reason for its enactment and the grounds of its invalidity, if it is invalid. The first paragraph of the preamble recites the names of a number of claimants and states in general terms that they have rendered services or furnished material or utility service, as set forth in the act for which they have not been paid. The preamble proceeds:

"and WHEREAS, Vouchers for the supplies furnished and personal services rendered, and personal expense incurred, have been delivered to the State Auditor, all of which were in proper form, the totals carried on each being correct and receipt required by law and the regulations of the State Board of Examiners covering the item being submitted therewith; and

"WHEREAS, It was impossible for the State Board of Examiners to legally examine, consider or act upon said items and favorably report them to the State Legislature as provided in Section 65–2017 I. C. A., because the State Auditor, as Secretary of the State Board of Examiners, failed to endorse thereon the certificate required to be made by him by Section 65–2013 I. C. A., and whereas the State Auditor

claimed he could not make the certificate required by Section 65–2013 I. C. A., because there were no funds in the State Treasury out of which the amounts might lawfully be paid, and

"WHEREAS, The State Insurance Fund has actually had the use and benefit of the supplies furnished and the services rendered; and without the supplies herein mentioned being furnished and the services being rendered it would have been impossible for the State Insurance Fund to investigate, adjust, settle, or pay claims against it, or to properly audit payrolls, or to properly function; and

"WHEREAS, The State Insurance Fund has had the full use and benefit of the supplies furnished and the services rendered; and

"WHEREAS, The Twenty-second Session of the State Legislature failed to make sufficient appropriation to enable the State Insurance Fund to properly carry on its business, during the biennium ending December 31, 1934.

"NOW, THEREFORE, BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF IDAHO:"

Then follows the act, section 1 of which reads:

"There is hereby appropriated from the State Insurance Fund, not otherwise appropriated, for the relief and reimbursement of the various persons hereinafter named and whose claims have heretofore been presented to the State Board of Examiners *and not acted upon by the said Board, or reported to the Legislature for action* for the reasons above stated the amount of money set opposite their respective names. The name of the person herein reimbursed, the nature of the material or service rendered, together with the amount appropriated for each, are as follows:

| "Names of Persons | "Nature of Material Furnished or Service Rendered | Amount |
|---|---|---|
| "Capital News Publishing Co. | Printing matter | $210.50" |

(and numerous other claims. Italics ours).

The sections of the statute referred to in the foregoing preamble to the act read as follows:

"65–2017. Audit of claims. It is the duty of the state board of examiners to examine all claims, except salaries and compensation of officers fixed by law, and except fixed appropriations for principal and interest of the public bonded debt, and except claims against the state already presented to the board and favorably reported by it to the legislature for passage. The board may approve or disapprove any claim or demand against the state, or any item thereof, or may recommend a less amount in payment of the whole, or any item thereof, and a decision of a majority of the members shall stand as the decision of the board. But no claim shall be examined, considered or acted upon by said board, unless the state auditor, as secretary of the state board of examiners, shall have indorsed thereon the certificates required to be made by him by section 65–2013, and unless receipted vouchers are [filed] therewith showing the payment of all items for which reimbursement is asked.

"65–2013. Certification of account by auditor. On all accounts submitted to the state board of examiners for their action, the state auditor must certify that the account is in proper form, that the totals carried thereon are correct, that receipts when required by law or regulation of the board covering items for which reimbursement is asked are submitted therewith, and that there are funds in the state treasury out of which the same may lawfully be paid."

In order to get a correct understanding of the last-quoted sections of the statute and the references by recital in the act under scrutiny, we must also consider sections 57–1015, 57–1016 and 57–1017, which are as follows:

"57–1015. Deficiencies—Creation prohibited—Exception. No officer, employee or state board of the state of Idaho, or board of regents or board of trustees of any state institution, or any member, employee or agent thereof shall enter, or attempt to offer to enter into any contract or agreement creating any expense, or incurring any liability, moral, legal or otherwise, or at all, in excess of the appropriation made by law for the specific purpose or purposes for which such expenditure is to be made, or liability incurred, except in the case of insurrection, epidemic, invasion, riots, floods or fires.

"57–1016. Deficiencies—Contracts in creation of, void. Any indebtedness attempted to be created against the state in violation of the provisions of this chapter, or any indebtedness attempted to be created against the state in excess of the appropriation provided for in any act, shall be void. The income accruing to any state institution, after the same has been certified quarterly to the board of trustees of any such institution by the auditor, shall be deemed an appropriation to such institution, and shall be governed by the provisions of this chapter regarding appropriations, and regarding the creation of indebtedness in excess of such appropriation.

"57–1017. Deficiencies—Penalty for creating. Any person violating the provisions of the two preceding sections shall be deemed guilty of a misdemeanor, and shall be disqualified from holding any state office or from being employed by the state of Idaho or by any board of regents or board of trustees of any state institution for a period of four years from and after the commission of the offense."

The Constitution provides, section 13, article 7:

"No money shall be drawn from the treasury, but in pursuance of appropriations made by law."

Section 18, article 4 of the Constitution:

"The governor, secretary of state, and attorney general shall constitute . . . . a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law. And no claim shall be passed upon by the legislature without first having been considered and acted upon by said board."

Now when we come to examining the recitals of this act, to ascertain why "it was impossible for the State Board of Examiners to legally examine, consider or act upon said items," we find that the state auditor "could not make the certificate required by section 65–2013, I. C. A., because there were no funds in the State Treasury out of which the amounts might lawfully be paid." In other words, the legislature had not made a specific appropriation to pay this bill and the Constitution (sec. 13, art. 7) says that "no money shall be drawn from the treasury, but in pursuance of appropriations made by law." If there was no appropriation out of which

to pay the bill, then section 57–1015, *supra, prohibited every officer and employee* of the state from "creating any expense or incurring any liability, moral, legal or otherwise," against the state for such claim. Section 57–1016, *supra,* declares any such contract "void," and section 57–1017, *supra,* declares that the contracting of any such bill is a "misdemeanor."

It further appears conclusively, on the face of the preamble to this act, that the legislature was attempting to do something that the Constitution forbade and the statutes stamped as a misdemeanor. In *Epperson v. Howell,* 28 Ida. 338, at 343, 154 Pac. 621, this court defined "appropriation," as meant by section 13, article 7, *supra,* and said:

"An appropriation, within the meaning of the section of our constitution last above quoted is authority from the legislature expressly given in legal form, to the proper officers, to pay from the public moneys a specified sum, and no more, for a specified purpose, and no other. It follows that no money may lawfully be paid from the treasury except pursuant to and in accordance with an act of the legislature expressly appropriating it to the specific purpose for which it is paid. No money having been appropriated for that purpose, the state is as effectually precluded by sec. 13, art. 7, from paying its proportionate share of the expense of giving emergency employment as is the county from retaining it from the state treasury by sec. 7, art. 7, of the constitution. (*Kingsbury v. Anderson,* 5 Ida. 771, 51 Pac. 744; *Kroutinger v. Board of Examiners,* 8 Ida. 463, 69 Pac. 279, and *Jeffreys v. Huston,* 23 Ida. 372, 129 Pac. 1065.)"

To the same effect see *State v. Hackmann,* 314 Mo. 33, 282 S. W. 1007, discussing similar facts to the case at bar, under like constitutional provisions.

In 1897, less than eight years after the adoption of the Constitution, this court had occasion to construe the above quoted provisions of section 18, article 4 in the case of *Pyke v. Steunenberg,* 5 Ida. 614, 618, 51 Pac. 614, and said:

"I suppose the intent and purpose of the framers of the constitution was to establish a board independent of all other boards, whose duty it is made to pass upon, 'and approve or disapprove,' all claims against the state not included in

the classes excepted. The jurisdiction is conferred upon this court by the constitution (section 10, article 5) to hear claims against the state, and to make decisions thereon, which decisions 'shall be merely recommendatory'; and this court has declined to hear any claims against the state until the same have been passed upon by the board of examiners. The board of examiners were created by, and derive their jurisdiction and authority from, the same source as this court, and, while acting within the scope of such authority, the courts have no power to direct or control their action. It is true that, should the board refuse to act in a matter upon which the law requires them to act, it is within the legitimate authority of the courts to compel them to act, because, as heretofore shown, until they do act the claimant is debarred from further pursuing his remedy. But we know of no authority, vested in this or any other court, which would authorize them to direct how the board of examiners should act in any case. To do so, would be, in our opinion, to override both the constitution and the laws, and to substitute for a tribunal provided by the constitution one clearly never contemplated by the framers of that instrument. Neither the constitution nor the statutes provide for or ever intended an appeal from the board of examiners to the courts. When a claim has been rejected by the board of examiners, the claimant may present his claim to the supreme court for a hearing, and that court, if it deems such action proper, may recommend its allowance by the legislature; and these proceedings are not limited to claims for which no appropriations have been made, but cover all claims against the state not included within the classes excepted by the constitution and the statutes.''

The foregoing case was quoted with approval in 1908 in *Bragaw v. Gooding*, 14 Ida. 288, 294, 94 Pac. 438, the court saying:

''This court has no authority whatever to direct the state board of examiners how to act. The constitution creates the state board of examiners as a tribunal, with full power and jurisdiction to pass upon all claims against the state, except those specifically excepted by the constitution, and *no court*

*or other tribunal is authorized to set aside or reverse such action.''*. (Italics ours.)

The Bragaw case was cited with approval in *Gem Irr. Dist. v. Gallet,* 43 Ida. 519, 524, 253 Pac. 128, and after stating the facts of the case, the court said:

*''Upon these facts the board was constitutionally vested with the sole and exclusive power to determine, rightly or wrongly, the allowance or disallowance of the claim.* The board's discretion was absolute.' (Italics ours.)

In *Epperson v. Howell, supra,* a writ of mandate was sought and, in course of discussion of the necessity for an appropriation and submission of a claim to the state board of examiners, this court said:

''Our attention is also directed to the fact that no provision is made for the submission of claims against the state, arising out of emergency employment, to the state board of examiners, but, upon the other hand, payment of funds belonging to the state, without such examination, is attempted to be provided for. This feature of the chapter is in contravention of sec. 18, art. 4, of the constitution, which grants to that board power to examine all claims against the state, except for salaries or compensation of officers fixed by law. (*Winters v. Ramsey,* 4 Ida. 303, 39 Pac. 193.)''

In *Davis v. State,* 30 Ida. 137, 141, 163 Pac. 373, Ann. Cas. 1918D, 911, the plaintiff sought a recommendatory judgment from this court for a claim against the state. In passing upon the questions involved, the court considered and construed section 10, article 5, and section 18, article 4 of the Constitution, and after quoting from Pyke case, said:

''It will be remembered that under the provisions of sec. 10, art. 5, this court has original jurisdiction to hear claims against the state, that its decisions are merely recommendatory, and that they shall be reported to the next session of the legislature for its action. It will also be remembered that sec. 18, art. 4, provides that no claim against the state, except salaries and compensation of officers, fixed by law, shall be passed upon by the legislature without first having been considered and acted upon by the board of examiners. (*Kroutinger v. Board of Examiners,* 8 Ida. 463, 69 Pac. 279;

*Bragaw v. Gooding,* 14 Ida. 288, 94 Pac. 438; *Pyke v. Steunenberg, supra.*)

"Construing these two sections together it would appear that only one method of presenting and prosecuting to a conclusion claims against the state has been provided: that in the first instance a claim must be presented in proper form to the state board of examiners, and if there rejected this court has original jurisdiction of suits upon proper claims and may in some cases give a recommendatory judgment, which in turn shall be presented to the next legislature to be allowed or disallowed. *The mere fact that this court has original jurisdiction to hear claims against the state does not relieve claimants of the obligation in the first instance of presenting their claims to the state board of examiners.*" (Italics ours.)

From the foregoing citations it will be seen that this court has continuously and uniformly held, ever since 1898, that the sole and exclusive original jurisdiction to pass upon and allow or reject claims against the state (with certain exceptions, of which this is not one) is vested by the Constitution (sec. 18, art. 4) in the State Board of Examiners and that, "no claim against the state, except salaries and compensation of officers fixed by law, shall be passed upon by the legislature without first having been considered and acted upon by said board."

Justice Huston, a man of learning, wisdom and wide experience, was one of the first justices of this court under the Constitution, and we place great stress on his statement in the Pyke case, wherein he says:

"I suppose the intent and purpose of the framers of the constitution was to establish a board independent of all other boards, whose duty it is made to pass upon, 'and approve or disapprove,' all claims against the state not included in the classes excepted. . . . . The board of examiners were created by, and derive their jurisdiction and authority from, the same source as this court, and, while acting within the scope of such authority, the courts have no power to direct or control their action."

If we accept this at its face value, as we do, then, under the section Justice Huston was considering, the *legislature*

*has no more jurisdiction to direct or control the action of the board, than the court has,* since all three bodies, the legislature, the board of examiners and the Supreme Court, derive their respective powers from the same instrument. Each department must exercise its constitutional functions independently of every other department, and where the Constitution requires that one department shall act before another can take hold of or give relief in the same matter, the Constitution is mandatory and its requirement must be observed.

It necessarily follows, from the wording of the Constitution itself and the continuous construction that has been placed on it by the highest court of the state, that the framers of the Constitution meant and intended to vest exclusive original jurisdiction in the State Board of Examiners, to pass upon, allow or reject, or allow in part and reject in part, claims against the state (*Curtis v. Moore,* 38 Ida. 193, 221 Pac. 133) ; and that if the board fails or refuses to act, the court will issue a proper writ commanding them to act; and if the board rejects a claim, under section 10, article 5, this court may hear a case involving its validity ''but its decision shall be merely recommendatory.'' But the Supreme Court will not hear or consider any claim against the state until the same has been passed on by the board of examiners. (*Pyke v. Steunenberg,* 5 Ida. 614, 51 Pac. 614; *Davis v. State,* 30 Ida. 137, 163 Pac. 373, Ann. Cas. 1918D, 911.) It may be further observed, that, under section 18, article 4, the *legislature* has no power or authority to pass upon a claim against the state ''without its first having been considered and acted upon by said board.''

It is equally true that, under paragraph 18, section 19, article 3 of the Constitution, the legislature is forbidden to ''pass local or special laws . . . . legalizing as against the state the unauthorized or invalid act of any officer.'' If the claim was originally incurred in violation of section 57–1015 of the statutes and sec. 13, art. 7 of the Constitution, it follows that any subsequent attempt of the legislature to pay it was unconstitutional.

We pause here to note what, if any, effect a stipulation that has been filed should be given in the matter of

vesting or ousting legislative power to pass the act in question. The stipulation shows that *at the time the purchase orders bear date* (Oct. 18 and Dec. 4, 1934) there was enough in the total "State Industrial Insurance Fund" appropriation to pay the claims, though there was at that time nothing in the special funds designated by the act (chap. 56, 1933 Sess. Laws) as "services other than personal" and "supplies," respectively. The claim here involved was for printing matter. It is believed that these matters cannot be considered here, for the reason that the act here in question (chap. 46) recites on its face that the "claims have heretofore been presented to the State Board of Examiners and not acted upon by the said Board, or reported to the Legislature for action" and the Constitution, as we have seen, prohibits the legislature passing on a claim without it "first having been considered and acted upon by" the examining board. Furthermore, the preamble to the act recites that "it was impossible for the state board of examiners to legally examine, consider, or act upon said items," etc.

In this connection it is urged by plaintiff that there might be sufficient appropriation to pay a bill when the purchase is made and still, when the claim comes in for allowance and payment, the appropriation be exhausted; and that in such case the claim would be a just and lawful claim. Section 65–1504, I. C. A., meets such contingency and appears to be sufficient to protect those dealing with state officers and employees, as well as the state itself, against such claims, by requiring the books in the office of the purchasing agent to "*show . . . . every contract for supplies or other purposes made by said department,* which books and records so far as same relate to contracts for supplies, shall be open to public inspection." So, when purchase orders exhaust the appropriation, no further orders are legal. It should be noted that the books, which section 65–1504, *supra,* requires the state purchasing agent to keep in his office, are an entirely different and separate set of books from those referred to in the stipulation filed herein as kept in the office of the state auditor. The state auditor's books might show funds on hand for a particular department and a special purpose, while, at the same time, the books in the office of the purchas-

ing agent would show the fund exhausted. The prohibitions of the statutes and the Constitution against creating any expense or incurring any liability against the State, in excess of existing appropriations therefor, apply to the time of incurring the expense or liability rather than to the time the particular bill or claim is presented for payment. The particular department issuing the requisition and the purchasing agent, in making the order, are restricted in the making of any purchase to the actual state of the fund as shown by record of outstanding orders at that time. If it were otherwise, the purchasing agent on requisition of a department might make a large number of orders in excess of the appropriation, as shown by his record of outstanding claims, and yet within the appropriations as shown by the auditor's books at that particular time. If such practice prevailed it would often become a question of a race between claimants, as to which could get his claim first presented to, and allowed by, the examining board and warrant issued.

■ We conclude that the act in question (chap. 46 of the 1935 Sess. Laws, 1st Ex. Sess.) violates section 18, article 4 and paragraph 18, section 19, article 3 of the Constitution.

The alternative writ is quashed and the action is dismissed. No costs awarded.

Holden, J., concurs.

Givens, J., concurs except as to the construction placed on paragraph 18, section 19, article 3 of the Constitution.

MORGAN, C. J., Concurring.—That part of I. C. A., sec. 65-2017, which attempts to except claims against the state, other than for "salaries and compensation of officers fixed by law," is violative of Idaho Constitution, article 4, section 18, as is also the following portion thereof:

"But no claim shall be examined, considered or acted upon by said board, unless the state auditor, as secretary of the state board of examiners, shall have indorsed thereon the certificates required to be made by him by section 65-2013, and unless receipted vouchers are [filed] therewith showing the payment of all items for which reimbursement is asked."

Article 4, sec. 18 of the constitution specifies that ''They (the governor, secretary or state and attorney general) shall also constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, . . . . '' The legislature cannot limit the powers which have been granted to the state board of examiners by the constitution, nor exempt it from the performance of duties imposed upon it thereby.

It is not to be understood from my concurrence in the foregoing opinion that I approve the decision of this court in *Gem Irr. Dist. v. Gallet*, 43 Ida. 519, 253 Pac. 128.

ON REHEARING.

(July 9, 1937.)

MORGAN, C. J.—A rehearing has been granted and the case has been reargued by the attorneys for the parties litigant and by Messrs. Charles F. Reddoch, J. R. Smead and Jess B. Hawley, who appeared as friends of the court.

After fully reconsidering the case, we adhere to our views heretofore expressed.

Ailshie and Givens, JJ., concur.

HOLDEN, J., Concurring.—Following the filing of the opinion in this case, Relator Hansen filed a petition for rehearing, which this court granted. Thereupon an application was filed by J. R. Smead, Charles F. Reddoch, and Jess B. Hawley for leave to file a brief as friends of the court, which application also was granted.

Upon rehearing, the questions presented by the record were fully and forcefully argued by counsel for the respective parties, as were the questions discussed and urged by the above-named friends of the court. I have again carefully examined and considered the authorities, as well as the constitutional and statutory provisions cited, but do not find any sound reason for departing from the opinion heretofore filed in this case and, therefore, adhere thereto.

However, the brief filed by the friends of the court leads me to point out: That Mr. P. C. O'Malley, former manager

of the State Insurance Fund, is not a party to this action; that he is not on trial in this case; that this court has not adjudged him guilty of any misconduct whatsoever, and that this court has not decided that he is ineligible to hold the office of manager of that fund.