(No. 6696.   May 25, 1939.)

G. W. SUPPIGER, FRANK LANGLEY, W. L. ROBISON and W. F. REYNOLDS, Plaintiffs, v. MYRTLE P. ENKING, State Treasurer, Defendant.

[91 Pac. (2d) 362.]

Vestal P. Coffin and B. B. Belknap, for Plaintiffs.

J. W. Taylor, Attorney General, and Lawrence B. Quinn, R. W. Beckwith, E. G. Elliott and D. W. Thomas, Assistant Attorneys General, for Defendant.

GIVENS, J.—Plaintiffs' application for writ of mandate, alleges in substance an appropriation was made for expenses of the administration, by the Industrial Accident Board composed of the first three plaintiffs, the fourth being the board's disbursing officer (sec. 43–1301, I. C. A.; 1935 Ida. Sess. Laws Third Extraordinary Session, July 28, 1936, chap. 12, p. 20, amended, 1937 Ida. Sess. Laws, chap. 9, p. 20; chap. 183, p. 303; chap. 187, p. 311; chap. 188, p. 320, and chaps. 202 and 239, Ida. Sess. Laws 1939), and that March 21, 1939, the State Board of Examiners approved and allowed plaintiffs' requisition for a revolving fund for $250 out of said appropriation under secs. 65–2018 to 65–2021, I. C. A.[1]

---

[1] 65–2018, I. C. A.: "A revolving or general expense fund may be created by the state board of examiners for any state officer, department, board or institution in the manner provided in sections 65–2019 to 65–2021, and not otherwise."

65–2029, I. C. A.: "The requisition of the head of any department, board or institution or the disbursing officer thereof requesting a

Defendant, State Treasurer, admitting the facts, refuses to pay a sight draft[2] duly drawn in accordance with the rules and forms as prescribed by the department of finance (sec.

revolving fund shall be acted upon by the board of examiners in the same manner as a claim against the state and, if allowed, shall be regarded as an advance for current cash items. It shall be allowed only in case an appropriation has been made by law for the specific expenditures intended to be paid out of the fund. The amount of the revolving fund shall be charged by the auditor against the officer making the requisition who may, if the board deems necessary, be required to give a bond in addition to his official bond, in such sum as the board may fix, to secure the repayment of such fund."

65–2020, I. C. A.: "The money advanced shall remain in the state treasury for the use of the officer making the requisition in the payment of cash items constituting claims against the state. The fund may be drawn upon by a sight draft signed by the officer and attached to an itemized voucher for the expenditure, both in such form as the department of finance shall prescribe."

65–2021, I. C. A.: "At stated intervals to be fixed by the board by general regulation each officer having a revolving fund shall present a complete itemized account of all expenditures therefrom for allowance or rejection. If any item thereof is disallowed, the officer shall replace the amount thereof in the revolving fund. The amount of items allowed shall be credited by the auditor to the officer or replaced in the revolving fund."

[2] STATE OF IDAHO
REVOLVING FUND SIGHT DRAFT

April 6, 1939

Pay to the Order of————————————————$53.75

Fifty-three and 75/100——————————————Dollars,

From Unemployment Compensation Administration Revolving Fund

TO THE STATE TREASURER OF THE STATE OF IDAHO
BOISE, IDAHO

W. F. REYNOLDS
Disbursing Officer

DO NOT DETACH                    DO NOT DETACH

STATE OF IDAHO
REVOLVING FUND VOUCHER

No. U. C. –1

The amount herein is a charge to the undersigned disbursing officer who assumes liability therefor.

65–2020, I. C. A.) thereon for prospective expenses of G. O. Bradshaw, an employee in the unemployment compensation administration, on the grounds that the revolving fund statute, *supra,* (1) delegates legislative powers to the State Board of Examiners in violation of art. 2, sec. 1, Ida. Constitution; (2) gives or loans the credit of the state in violation of art. 8, sec. 2, Ida. Constitution; (3) authorizes the withdrawal of money from the treasury without an appropriation contrary to art. 7, sec. 13, and (4) payment thereof without examination and approval by the board as required by art. 4, sec. 18 of the Constitution.

Taking up the first and third contentions first, there is a distinction between an appropriation, that is a setting aside by the Legislature of a specified amount of money for a particular purpose,[3] distinctively and recognizably a legis-

---

Funds are available in the Revolving Fund upon which the attached sight draft is drawn and an appropriation has been made by law for the specific expenditures intended to be paid by said sight draft.

W. F. REYNOLDS
Disbursing Officer

| Date | Items for Which Payment is Made | |
|------|---------------------------------|---|
| 4/6/39 | Advance for travel to Idaho Falls to hear appeal of Keyes M. Blair | 40.00 |
| | Advance for witness fees in said case | 10.00 |
| | Miscellaneous supplies used in appeal of Edison W. Bretthauer | 3.75 |
| | Total | 53.75 |

---

ENDORSEMENTS
/s/ Geo. O. Bradshaw
PAYMENT REFUSED** Not approved by
State Board of Examiners and not a State
Auditor's Warrant.
April 7, 1939

/s/ MYRTLE P. ENKING
State Treasurer.

[3] *Baline County Inv. Co. v. Gallet,* 35 Ida. 102, 204 Pac. 1066; *Epperson v. Howell,* 28 Ida. 338, 154 Pac. 621; *Herrick v. Gallet,* 35 Ida. 13, 204 Pac. 477; *Jackson v. Gallet,* 39 Ida. 382, 228 Pac. 1068; *Robison v. Enking,* 58 Ida. 24, 69 Pac. (2d) 603; *Idaho Gold Dredg. Co. v. Balderston,* 58 Ida. 692, 78 Pac. (2d) 105.

lative function and prerogative, and the manner, method or means by which the money thus provided by appropriation is spent, that is, applied to the purpose for which appropriated.

"The making of expenditures and appropriating public money are different things. The former is the 'act of expending; a laying out of money; disbursement,' The latter is: 'To set apart for, or assign to, a particular person or use, in exclusion of all others.' Webster's New Int. Dict. See *Brown v. Honiss,* 74 N. J. L. 501, 68 Atl. 150; *Niles School v. Bailey,* 161 Mich. 193, 126 N. W. 116; *Ainsworth v. Dean,* 21 N. H. 400."

(*Grout v. Gates,* 97 Vt. 434, 124 Atl. 76, 80; *State v. Lee,* 121 Fla. 360, 163 So. 859, 868; *State v. Board of Suprs.,* 141 Miss. 701, 105 So. 541, 549.)

The terms of the revolving fund statute expressly provide it may operate only if there be an appropriation, and there admittedly is one. (*McConnel v. Gallet,* 51 Ida. 386, 6 Pac. (2d) 143; *Robison v. Enking,* 58 Ida. 24, 69 Pac. (2d) 603.)

Out of this appropriation, not as an attempted new or different or any appropriation, but as part of the method, manner or means of expending this appropriation by the department to and for whom it was made by the Legislature, has been set apart for "current expenses" $250 to be, as drawn upon, replenished from the appropriation, this initial step to be passed upon and approved by the board of examiners as required by the Constitution, Statutes[4] and decisions. (*State v. Robison,* 59 Ida. 485, 83 Pac. (2d) 983.) While the statute uses the word "create," no new or additional $250 has been created or brought into existence but that amount of the appropriation made by the Legislature has been set aside, at

---

4 Art. 4, sec. 18, Ida. Constitution:

"The governor, secretary of state, and attorney general shall . . . . also constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law. And no claim against the state, except salaries and compensation of officers fixed by law, shall be passed upon by the legislature without first having been considered and acted upon by said board."

See, also, I. C. A., sections 65–2002, 65–2003, 65–2004, 65–2014, 65–2017.

the request of the department concerned, by the board of examiners, for cash advances. Words are to be given the meaning the context indicates. (*Chandler v. Lee*, 1 Ida. 349; *In re Segregation of School Dist. No. 58*, 34 Ida. 222, 200 Pac. 138.)

The appropriation was made for the department and contemplates it will be spent by the department by paying it out on claims first approved as advances and later as itemized and submitted by the disbursing officer to the board, for legitimate and necessary expenses. The only difference and only purpose as disclosed by the terms of this revolving fund act and the previous system is that for current running expenses of this or any other department or officer for whom such fund is authorized by the board, cash is advanced to the officer or employee instead of making him pay out his own money in the first place and all withdrawals are by the method thus provided, "pursuant" to appropriation.

Under the system in vogue prior to the use of revolving funds as we understand it the officer submitted his expense account after paying his money and he was reimbursed and no claim was put in by the party actually furnishing the services, or payment made direct to him.

"It hardly seems necessary to state that the statute does not necessarily contemplate that the members of the emergency board, when an unforseen emergency exists, shall themselves attend to or perform the detailed work in making such unforseen emergency expenditures. . . . . But the statute does contemplate that, in the interest of state economy and governmental efficiency, the board shall take the administration of the particular work there intrusted to it, and that the moneys and appropriations shall be used under the general direction and control of the board and its official designation, and that the itemized statement, accompanied by vouchers, required by the last clause of the section, shall be rendered to the auditor of accounts by the board itself and in its name. Thus construed the statute carries into effect, as it should, the intention of the Legislature with reference to the manifest object to be accomplished by it. *In re National*

*Guard,* 71 Vt. 493, 45 Atl. 1051.'' (*Grout v. Gates,* 97 Vt. 434, 124 Atl. 76, 80, *supra.*)

Since the appropriation was admittedly intended for the ultimate payment of these expenses by the state the manner does not constitute an unlawful or unconstitutional withdrawal of money from the treasury as not pursuant to an appropriation. No more than the amount of the appropriation can be spent because of this revolving fund; the appropriation as made by the Legislature remains the limit.

The words ''pursuance'' and ''pursuant'' are defined by Funk and Wagnalls New Standard Dictionary thus: ''a following after, or following out; done in accordance with or by reason of something; conformable; in accordance; agreeably, conformably.'' and by Webster's International Dictionary; ''a carrying out or with effect, the act of executing; that which is pursuant; consequence; acting or done in consequence or in prosecution (of anything); hence, agreeable; following; according;—with to or of; agreeably, conformably.'' (See 51 C. J. 105.)

█ No appropriation being contemplated or made by the board of examiners under this statute, there is no delegation of legislative authority. (*State v. Kelly,* 27 N. M. 412, 202 Pac. 524, 21 A. L. R. 156.)

█ The board of examiners has sole discretionary power to decide how and in what manner it will pass upon and allow or reject claims against the state. (*Bragaw v. Gooding,* 14 Ida. 288, 94 Pac. 438; *Curtis v. Moore,* 38 Ida. 193, 221 Pac. 133; *Gem Irr. Dist. v. Gallett,* 43 Ida. 519, 253 Pac. 128; *State Water Conservation Bd. v. Enking,* 56 Ida. 722, 58 Pac. (2d) 779; *State ex rel. Hansen v. Parsons,* 57 Ida. 775, 69 Pac. (2d) 788.)

██ It might be that the board alone has power (which we do not decide) since no limitation thereon is in the Constitution, upon its right to make whatever rules it deems best or necessary, as long as they do not conflict with the Constitution, prescribing how appropriations may be made available for use, and claims thereon made up, presented and approved. However we need not outline any clear line of demarcation between what are clearly legislative and execu-

tive functions in this respect under art. 2, sec. 1, for this reason: first, if the setting up of this scheme for cash advances for expenses be administrative and executive, there has been no delegation of legislative function because the Legislature may not delegate what it does not have; if however, authority to set up a revolving fund be legislative, the Legislature giving authority to the board to so do has not delegated any legislative function, since it has exercised its legislative function first by making an appropriation, as above indicated, and second, it has merely granted authority within defined and safe guarded limits for executive and administrative action. (*Idaho Power & Light Co. v. Blomquist*, 26 Ida. 222, 141 Pac. 1083, Ann. Cas. 1916E, 282; *Marshall v. Dept. of Agriculture*, 44 Ida. 440, 258 Pac. 171; *Chambers v. McCollum*, 47 Ida. 74, 272 Pac. 707; *State v. Johnson*, 50 Ida. 363, 296 Pac. 588.)

If limitation on the amount of any revolving fund the board may authorize be needed, it is found in the phrase "current cash items." (*State v. Johnson, supra.*) The usual and ordinary meaning of the words "current cash items" and the context clearly connotating, in point of time, present and immediate expenditures therefrom, and limited in amount. (*McClure v. Nye*, 22 Cal. App. 248, 133 Pac. 1145; 14 C. J. S. 16.)

Statutes authorizing cash advances for expenses similar to secs. 65–2018 to 65–2021, I. C. A., adopted by other states with constitutional provisions comparable, and in some instances identical, with those relied upon by defendant are appended in the foot note.[5]

[5] Arizona: Loan of public credit, Const., Art. X, Sec. 7; Distribution of powers, Const., Art. III; Ariz. Code 1928, Secs. 2628, 2629, 2630.

California: Board of Examiners, Const., Art. IV, Sec. 1a, par. 2; Distribution of powers, Const., Art. III: Loan of credit, Const., Art. IV, Sec. 22; Appropriations, Const., Art. IV, Sec. 22; Revolving funds, Sess. Laws 1933, Chap. 644, p. 1675.

Delaware: Loan of credit, Const., Art. VIII, Sec. 8; Appropriations, Const., Art. VIII, Sec. 6; Revolving funds, Sess. Laws 1921, No. 32, Chap. 128, Sec. 10 as amended, Sess. Laws 1931, No. 37, Chap. 51, p. 165.

■ By this statute state money is advanced to a public official for use by him in official business and "credit" in the sense used in art. 8, sec. 2, is clearly not "given" or "loaned" in aid of any individual as the decisions construing this section of the Constitution, or similar provisions in other constitutions, clearly disclose. The money is given the official not to aid him as an individual but in furtherance of official business which the officer is carrying on for the state. The ultimate test herein is not when or how he receives the money (based, of course, on the premise there was a valid available

Kansas: Appropriations, Const., Art. II, Sec. 24; Publication of expenditures, Const., Art. XV, Sec. 5; Revolving funds, Sess. Laws 1935, p. 395.

Massachusetts: Loan of credit, Const., Art. LXII, Sec. 1; Appropriations, Const., Chap. II, Sec. XI; Annotated Laws of Mass., Chap. 29, Secs. 23, 24, 25, Vol. 1, p. 159.

Michigan: Board of Examiners, Const., Art. VI, Sec. 20; Distribution of powers, Const., Art. IV, Secs. 1, 2; Loan of credit, Const., Art. X, Sec. 12; Appropriations, Const., Art. X, Sec. 16; Postage stamp money, Code 1929, Secs. 324–9, 371–3.

Minnesota: Distribution of powers, Const., Art. III; Loan of credit, Const., Art. IX, Sec. 10; Appropriations, Const., Art. IV, Sec. 12, Art. IX, Sec. 9; Treasurer's accounts, Const., Art. IX, Sec. 11; Revolving fund, 1935 Sess. Laws, Chap. 19, p. 22.

Mississippi: Distribution of powers, Const., Art. I, Secs. 1 and 2; Loan of credit, Const., Art. XIV, Sec. 258; Maintenance funds, Code 1930, Secs. 7178, 7179.

Montana: Board of Examiners, Const., Art. VII, Sec. 20; Distribution of powers, Const., Art. IV; Loan of credit, Const., Art. V, Sec. 38; Appropriations, Const., Art. V, Sec. 34; Contingent funds, Code 1935, Sec. 195.

Nebraska: Distribution of powers, Const., Art. II: Loan of credit, Const., Art. XIII, Sec. 3; Appropriations, Const., Art. III, Sec. 25; Contingent revolving accounts, Comp. Stat. 1929, Sec. 83–131.

Oklahoma: Board of Examiners, Const., Art. V, Sec. 60; Distribution of powers, Const., Art. IV; Loan of credit, Const., Art. X, Sec. 15; Appropriations, Const., Art. V, Sec. 55; Revolving funds, Stat. 1921, Secs. 8648 to 8665.

Oregon: Distribution of powers, Const., Art. III; Loan of credit, Const., Art. XI, Sec. 7; Appropriations, Const., Art. IX, Sec. 4; Revolving funds, Sess. Laws 1931, p. 556, Chap. 320.

Rhode Island: Distribution of powers, Const., Art. III; Rotary fund, Sess. Laws 1927, Chap. 981, p. 108.

appropriation) but what it is spent for. The expenditure must be authorized by law, that is expense legitimately chargeable to and to be paid by the state with public funds.

This court in *Bannock County v. Citizens B. & T. Co.*, 53 Ida. 159, 167, 22 Pac. (2d) 674, in approving *Fluharty v. Board of County Commrs.*, 29 Ida. 203, 158 Pac. 320, condemning a donation by a county to a private fair association under art. 8, sec. 4, prohibitory as to counties as art. 8, sec. 2 does the state, said at p. 167:

" . . . . That section attempted to authorize the appropriation so made by the board. This court stated that section 4 of article 12 of the Constitution 'in express terms prohibits a county through the Board of County Commissioners or by vote of its citizens or otherwise from making donation to, or in aid of, any company, corporation or association,' and that 'this association (Northwest Livestock Association) is a private corporation engaged in a private enterprise to which the County in the foregoing constitutional provision is prohibited from making a donation or appropriation. With such donation or appropriation made, it would place county funds donated or appropriated to such corporation under the control of the corporation and its officers, which funds would be appropriated to, and expended for, other purposes than the legitimate current expenses for the lawful administration of the government of the county, and by individuals not officers of the county or amendable to the laws authorizing the expenditure of public moneys,' and held section 3040 to be unconstitutional and void."

The statute under consideration does not thus offend because the money is not taken out of the hands of a state official, must be paid only for "legitimate current expenses for the lawful administration of the government of the (state)" and its disposition and mandatory return if not so spent is declared in positive terms by the statute, *viz*:

" . . . . If any item thereof is disallowed, the officer shall replace the amount thereof in the revolving fund. The amount of items allowed shall be credited by the auditor to the officer or replaced in the revolving fund."

The court further said in *Bannock County v. Citizens B. & T. Co., supra*, at p. 175:

"In interpreting the sections of the Constitution in question, the language employed must be taken and understood in its natural, ordinary, general and popular sense. (*Busser v. Snyder*, 282 Pa. 440, 128 Atl. 80, 37 A. L. R. 1515; 1 Cooley's Constitutional Limitations, 8th ed., p. 130; 1 Story's Const., sec. 451.) In the popular sense, lending or loaning money or credit is at once understood to mean a transaction creating the customary relation of borrower and lender, . . . . "

Certainly advancing expense money out of an appropriation for that purpose for state business does not create the customary relation of borrower and lender.

██ The extension of credit prohibited is credit extended to private sources to promote private schemes. (*McMahan v. Olcott*, 65 Or. 537, 133 Pac. 836.)

██ The inherent official and governmental nature of the service for which the expenditure is made and for which the advance is allowed determines its character as not giving or loaning the credit of the state. (*Fergus v. Russel*, 270 Ill. 304, 110 N. E. 130, 140-1; Ann. Cas. 1916B, 1120; *Neff v. Elgin*, (Tex. Civ. App.) 270 S. W. 873, 879; 59 C. J. 206, sec. 345 et seq.)

Much is made of what a correct definition of a claim is and when a claim is liquidated. In the first place the Constitution does not require that money under the control of the State Board of Examiners may not be paid out in the manner provided by the revolving fund statute; in the second place it is limited, under the terms of the act as above indicated, to current expense payments; in the third place the application for a revolving fund account is authorized and approved by the board before it is advanced by the disbursing officer for the use of the receiving officer for his current expenses, accounted for through and by him and in turn by the disbursing officer, such accounting being submitted again to the State Board of Examiners for their approval or disapproval; therefore its thus ultimate liquidation and payment out of a general appropriation though made up of several steps is all part of one continuous legal transaction.

The framers of the Constitution, by express direction placed full and complete power and confidence in the State Board of Examiners to exercise its discretion in the ultimate approval or disapproval of claims against the state (*State v. Parsons,* 57 Ida. 775, 69 Pac. (2d) 788) ; the greater includes the less. Thus no constitutional, legislative or judicial reason exists to conclude that the board will be less diligent and careful in guarding the state's interests in the preliminary procedure in the payment of money appropriated for governmental expenses allowed to be in the hands of state officials for that purpose, than in the final withdrawal of money from the appropriation made therefor to pay such expenses. As a matter of fact under this procedure the expenses are more rigidly scrutinized and are passed upon and checked twice by the board, first on the allowance to the disbursing officer, and second upon his itemized report of expenditures by the individuals receiving such advances.

It is therefore ordered that judgment be entered in favor of the plaintiffs and the writ of mandate compelling the treasurer to issue the draft be made permanent.

Ailshie, C. J., and Budge and Holden, JJ., concur.

Morgan, J., dissents.